THE STATE v. PETER SCHMIDT, *Appellant.*

Division Two, January 19, 1897.

1. **Criminal Practice:** JUROR, COMPETENCY OF.     One who states that he knows nothing of the case except from newspaper articles, which are not shown to be reports of the testimony of witnesses, and is without prejudice, his opinion being wholly conditional on the truth of what he read, is competent as a juror in a criminal case.

State v. Schmidt.

2. ——: MURDER: EVIDENCE: CONFESSION. A witness may testify that a statement made by another as to the details of the murder charged against defendant was read over to him and that he admitted it was true, the statement thus becoming his own where he was under no compulsion and no promises were held out to him.

3. ——: MURDER IN FIRST DEGREE. Homicide committed in an attempt to rob the deceased constitutes murder in the first degree.

4. ——: MURDER: DEATH PENALTY. One convicted of murder in the first degree though under eighteen years of age is subject to the death penalty.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*Martin & Bass* for appellant.

(1)  Challenge by defendant to venireman J. T. Williams should have been sustained. This case is not within the long line of cases of which *State v. Elkins*, 101 Mo. 344, is one. To change opinion of this juror defendant would be compelled to prove his innocence. Section 4197, Revised Statutes, 1889, should control. (2)  It was error to permit the state to introduce in evidence the statement of codefendant, John Schmidt, obtained by deputy sheriff Hencken on the tenth day of February, 1896. The objection to its introduction should have been sustained because: *First.* Appellant being under arrest and in custody, the reading of John Schmidt's statement in defendant's presence should not give said statement the form and character of an implied admission as against him. John Schmidt, being a codefendant and jointly indicted with appellant, was not a competent witness. Therefore a statement made by him should not be admitted. *State v. Howard*, 102 Mo. 142; *State v. Young*, 99 Mo. 666; R. S. 1889, sec. 4217; *State v. Chyo Chiagk*, 92 Mo. 395. *Second.* To

permit the statement to be introduced as evidence on part of the state is to allow the state to do indirectly what it could not do directly. John Schmidt being alive and within the jurisdiction of the court, the state, desiring to use him as a witness against appellant, should have given defendant the opportunity which the constitution accords of meeting the witness face to face. Bill of Rights of Mo., sec. 22; *State v. Able*, 65 Mo. 357. (3) The court having admitted the statement of John Schmidt only for the purpose and upon the express ground of showing defendant's connection, if any, with the offense charged, it was the duty of the court to have limited that evidence to that phase of the case by an appropriate instruction. Omitting to do so was prejudicial error. (4) Neither the indictment nor the evidence warranted an instruction upon the theory of a conspiracy. (5) The conduct of juror Anthony Willmas in leaving and separating himself from the balance of the jurors and engaging in a conversation with Lee Mudd, Esq., was such conduct as to entitle defendant to a new trial. *State v. Orrick*, 106 Mo. 111. (6) It was error for prosecuting attorney L. A. Heidorn in his closing address to draw attention of the jury and refer to the fact that the defendant had not testified as a witness in the case. R. S. 1889, sec. 4219; *State v. Moxley*, 102 Mo. 374. (7) Appellant's supplemental motion in arrest should have been sustained. Appellant, being "a boy under the age of eighteen years and convicted of a felony," he must be committed to the state reform school for boys. Sess. Acts, 1895, p. 190, sec. 5.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) The challenge to the juror J. P. Williams is insufficient, and it does not comply with, nor is the

court informed of the specific objection to the juror, as required by the rule announced in *State v. Taylor*, 35 S. W. Rep. 92. The entire examination of this juror shows that he was competent and qualified and that the court very properly retained him upon the panel of forty. *State v. Punshon*, 34 S. W. Rep. 25; *State v. Duffy*, 124 Mo. 1; *State v. Williamson*, 106 Mo. 169; *State v. Cunningham*, 100 Mo. 386. (2) The court very properly admitted the statement of John Schmidt in evidence. It was shown positively and conclusively that this statement was read over to this defendant; that he concurred in most of it; that while the statement was being read to him he asked and answered questions in reference to facts contained in the statement; that it was indorsed and agreed to by this defendant and hence in fact and in law became his statement. *State v. Murray*, 126 Mo. 616. (3) It was unnecessary for the court to instruct the jury the purpose for which the statement of John Schmidt was admitted in evidence; but even if necessary defendant can not complain because he failed to except to the failure and refusal of the lower court to give all the necessary instructions in the case. *State v. Paxton*, 126 Mo. 500; *State v. Cantlin*, 118 Mo. 111. (4) The instruction in reference to a conspiracy to waylay and rob the deceased was proper. (5) The record fails to show the alleged misconduct of the juror Anthony Willmas in engaging in a conversation with Mr. Mudd. Matters of objection and exception can not be shown by mere *ex parte* affidavits filed after conviction and after the motion for new trial has been filed. *State v. Foster*, 115 Mo. 448. However, the affidavits filed upon the part of the state as to this alleged error controvert and show the falsity of the claim of the defendant. *State v. Murray*, 126 Mo. 618; *State v. Orrick*, 106 Mo. 127; *State v. Sansone*, 116 Mo. 11. (6) The record also

fails to show misconduct upon the part of the prosecuting attorney in his argument to the jury.

GANTT, P. J.—At the January term, 1896, of the circuit court of St. Louis county, John Schmidt, Peter Schmidt and Samuel Foster were indicted for the murder of Bertram Atwater in the village of Webster Groves in St. Louis county on the night of the twenty-third of January, 1896. Upon motion a severance was granted to each and they were each duly arraigned.

The defendant Peter Schmidt or "Cotton" Smith, as he is often called in the record, entered his plea of "not guilty" and the cause was set down for March 9, 1896. At that time a jury was impaneled, the evidence heard and a verdict of guilty of murder in the first degree rendered. Motions for new trial and in arrest were promptly filed, heard, and overruled and the defendant sentenced to be hung on the nineteenth day of June, 1896. From that sentence this appeal has been prosecuted.

The evidence discloses a clear case of murder in an attempt to rob the deceased Atwater. Mr. Atwater was a sketch artist and had his studio in Chicago. On the night of January 23, 1896, he came to Webster Groves, a village some twelve miles west of St. Louis, on the Missouri Pacific Railway, to visit his friend, Mr. Orton, who resided in the village, and about a half mile from the station. The train on which he came arrived at 8:08 o'clock in the evening. He alighted with his grip and some instruments he used in sketching and went at once to a barber shop near by. At the barber shop he engaged the defendant to carry his grip for him. Defendant asked the barber how long it would take to shave Mr. Atwater and was told about ten minutes. Defendant left the shop for the avowed purpose of getting his gloves, but he went

immediately to a saloon near by and called out John Schmidt and asked him if he didn't want to do a job that night and being asked by John who the intended victim was, said he was from Chicago and said he had "a lot of money on him." These two then called the other defendant, Sam Foster, out and asked him to go and he consented if he could get a gun, which John offered to furnish, and did procure for him. It was then agreed that John Schmidt and Foster should go ahead to a place agreed upon and that when they cried "Hands up," "Cotton," this defendant, should drop the grip sack and fall down. The two then repaired to the place selected for the robbery and this defendant returned to the barber shop and when Mr. Atwater had received his shave and arranged his toilet somewhat they started together.

In his admissions to several witnesses he states that Mr. Atwater inquired whether there were any robberies being committed in this neighborhood and says he told him a great many and that they were likely to meet some robbers that night; that thereupon Mr. Atwater shifted his revolver to his right hand coat pocket and said he was prepared for them. They soon met Foster and John Schmidt and John Schmidt thrust his pistol in Atwater's face and ordered him to throw up his hands but Atwater immediately drew and fired at John, wounding him quite severely and John and Foster both fired, one of the balls striking Atwater in the chest on the right side, and entering between the second and third rib, severed the ascending aorta and produced almost instant death. The defendant asked Atwater if he was shot or was dead and receiving no answer, he then asked John how he was shot. Foster and defendant notified the constable that a man had been shot but concealed his connection therewith at the time.

John Schmidt supposing he would die made a statement of the whole plot and the parts each played in it. After he recovered somewhat he made other admissions and his written statement was taken down by the deputy sheriff and a reporter on the *Republic* These statements were read to defendant and Foster and fully corroborated by them as a true statement of the attempt to rob Atwater and of the manner in which he was killed. The real case is in a small compass and the exceptions saved are necessarily few. The errors assigned for reversal will be separately examined.

I. The juror Williams was clearly competent. He stated he knew nothing of the case except from newspaper articles. No effort was made to show the reports he read were the testimony of witnesses. His opinion was entirely conditional upon the truth of the reports he read. He had no prejudice.

II. There was no error in permitting witnesses to state that the statement made by John Schmidt was read over to Foster and defendant and that defendant and Foster agreed that it was true. Defendant was asked and answered various questions about the plan and particulars of the murder and confirmed all that John Schmidt had told them. John Schmidt's statement under the circumstances became to all intents and purposes his own statement and it was as competent as if he alone had narrated the facts contained in it. A statement made as this was is altogether different from a statement made in the presence of a defendant to which he makes no reply and when he is not at liberty to make a reply. In this case the attempt is not to bind him by his silence when he is advised of what his codefendant has stated but to hold him for his own express statements made in the conversation with Foster and his express acquiescence in the state-

ment made by John Schmidt. He was under no compulsion and no promises were held out to him to induce the statement. His statement moreover was corroborated by many other facts and circumstances in evidence. This point must be ruled against defendant.

III. It was entirely proper for the court to instruct as it did that if the jury found the murder was committed in the attempt to rob the deceased it was murder in the first degree. The charge in the indictment was sufficient to justify the evidence of the attempt to rob, and of the killing of deceased in the effort to rob him, and the instruction followed the evidence. *State v. Hopkirk,* 84 Mo. 278; *State v. Meyers,* 99 Mo. 107; *State v. Donnelly,* 130 Mo. 642.

IV. There is no merit in the claim of misconduct by the juror Willmas. Waiving the fact that the misconduct occurred in the presence of the court and required that counsel should have called it to the attention of the court, it is so utterly rebutted by the evidence of Mr. Mudd that it is unnecessary to say more on the subject.

V. There was no error in Mr. Heidorn's remarks in regard to the failure of defendant to deny John Schmidt's statement. His remarks referred entirely to a past transaction, and to the failure of defendant at the jail when that statement was read to him to deny it. He made no reference whatever to the failure of defendant to testify on the trial, or his failure to take the stand and deny the statement of John Schmidt. Moreover no objection was made at the time and no exception saved in the manner required by the uniform decisions of this court.

VI. There is little to be said in regard to the proof that defendant was under eighteen years of age. If true it was no ground for new trial. It could only affect the sentence; but section 5 of the act to provide

for the government of the state reform school (Acts 1895, p. 190), does not expressly repeal the statute which provides that persons convicted of murder in the first degree shall suffer death, and it is quite evident that it does not do so by implication. There is no such irreconcilable conflict between section 3461, Revised Statutes, 1889, and this act which only purports to regulate a state institution provided for those persons only whose punishment is by imprisonment. It is obvious that the legislature had no intention of abolishing the death penalty as to criminals under eighteen years of age. This act must be read and construed with reference to the purpose of its enactment, and when so read it is plain it was not the intention to repeal the death penalty as to any class.

VII. The record is without mitigating circumstances. It was a deliberate conspiracy to rob Mr. Atwater. The conspirators prepared themselves with deadly weapons to carry out their scheme. The plaintiff, it would seem, did not fire the shot that killed their victim, but he first conceived the robbery, solicited the assistance of the other two and led the deceased to the appointed place and was aiding and counseling in the perpetration of the crime, and he is as guilty under these facts as if he had fired the fatal shot. He has received a fair and impartial trial and the judgment is affirmed and the sentence pronounced is ordered to be carried into execution. SHERWOOD and BURGESS, JJ., concur.