The State v. Kornstett.

---

THE STATE OF KANSAS v. JOHN KORNSTETT.

No. 11,748.  (61 Pac. 805.)

| 62 | 221 |
|----|-----|
| 62 | 209 |
| 62 | 440 |
| 62 | 221 |
| 64 | 678 |
| 62 | 221 |
| 67 | 159 |
| 62 | 221 |
| e69 | 582 |
| 62 | 221 |
| 70 | 686 |
| 70 | 894 |

1. PRELIMINARY EXAMINATION — *Proceedings Construed as a Waiver.*  When a person charged with felony is afforded an opportunity for a preliminary examination, thereby given reasonable notice of the character of the offense charged against him, and thereupon enters a plea of guilty, averments that he did not understand the proceedings or know that what he said and did there would be construed as a waiver of a preliminary examination, do not state a sufficient ground for abatement of the prosecution.

2. MURDER — *Information Held Sufficient.*  An information charging the defendant with an assault with intent to ravish a girl, and that then, with deliberation and premeditation, he choked and beat her, struck her head against a tree with great violence, and that afterward he threw her body into a well, all with intent to kill and murder her, and that the wounds and injuries so purposely and feloniously inflicted caused her death, is not obnoxious to a motion to quash on the ground of duplicity.

3. JURY AND JURORS—*Service on Sunday—Examination.* The fact that persons drawn as jurors were served with process on Sunday, and were excluded from the court-room while other jurors were being examined as to their qualifications, does not disqualify them for jury service, nor operate to the prejudice of the defendant.

4. —— *Fixed Opinions, not Mere Impressions.* Fixed and positive opinions in regard to the issues involved in a criminal prosecution disqualify persons called as jurors, and not mere impressions obtained from rumor and newspaper reports, slight and fugitive in character, which do not indicate a condition of mind that precludes a fair and impartial examination of the facts when presented in the testimony.

5. CONFESSION OF CRIME—*Competency.* An extrajudicial confession will not be received in evidence unless it has been freely and voluntarily made. If it has been extorted by fear or induced by hope of benefit, profit, or amelioration, it should be excluded; but mere advice or admonition to the defendant to speak the truth, which does not import a threat or benefit, will not render a confession then given incompetent.

6. —— *Instruction not Erroneous.* Where proof of confession by the defendant has been received, and also circumstantial evidence of the offense charged, an instruction by the court which assumes that both direct and circumstantial evidence have been submitted to the jury is not misleading or prejudicial.

7. MURDER—*Instructions Properly Refused.* The charge of the court should be applicable and limited to the facts in evidence, and where the testimony shows beyond question that the defendant was either guilty of murder in the first degree or innocent of any offense, it is unnecessary to charge the jury as to any degree of the offense other than murder in the first degree.

8. —— *Convict under Sixteen—Sentence.* Section 299 of the crimes act (Gen. Stat. 1897, ch. 100, § 367; Gen. Stat. 1899, § 2253), which provides that "whenever any person under the age of sixteen years shall be convicted of any felony, he shall be sentenced to imprisonment in a county jail not exceeding one year, instead of confinement and hard labor, as prescribed in the preceding provisions of this act," does not apply to felonies for which the death penalty is imposed.

Appeal from Harper district court; P. B. GILLETT, judge. Opinion filed July 7, 1900. Affirmed.

*A. A. Godard*, attorney-general, *R. P. McCulloch*, county attorney, and *J. S. West*, for The State.

*Geo. E. McMahon*, and *John Baily*, for appellant.

The opinion of the court was delivered by

JOHNSTON, J.: John Kornstett was charged with and convicted of the murder of his cousin, Nora Kornstett, and the severest penalty of the law was adjudged against him.   In substance, the information charged the appellant with having attempted to ravish his cousin, and that then, with deliberation and premeditation, he choked and beat her and struck her head against a tree with great violence, and that afterward he threw her body into a well about twenty feet deep, all with intent to kill and murder her, and that the wounds and injuries so purposely and feloniously inflicted caused her death.   When taken before a magistrate for preliminary examination, he entered a plea of guilty, and subsequently, when the information was filed and he was arraigned before the court, he again entered a plea of guilty of the charge alleged. Subsequently he was brought before the court and was fully informed of the penalty for the crime charged against him, and was asked whether he desired to change his plea of guilty which had previously been entered, and in response to the inquiry he insisted that the plea of guilty stand.   About a week after that time, an application was made to withdraw the plea of guilty, which was granted by the court; and later, when arraigned again, he stood mute and refused to plead, and upon the order of the court a plea of not guilty was entered for him.

On this appeal the first contention is that he had no preliminary examination, and that his plea in abate-

ment should have been sustained. The docket entries of the magistrate recite that he was afforded an opportunity for a preliminary examination, when he entered a plea of guilty and was bound over for trial in the district court. In the plea which was filed he admitted that he was taken into a room, and that there were present officers and other persons, whom he did not know; that papers were read to him and proceedings were had which he did not understand, and which he did not fully remember. Other matters were alleged as to the locking of the doors and the fear of mob violence, and that he did not know that what he said or did there would be construed as a waiver of his right to a preliminary examination; but, upon the whole, we think that the defendant was offered a preliminary examination, and that reasonable notice was given to him in regard to the nature and character of the offense charged against him. "For the purpose of authorizing a final trial and requiring the defendant should plead to the merits of the action, all that is necessary is that the defendant should be given a fair opportunity to know by a proffered preliminary examination the general character and outlines of the offense charged against him." (*The State v. Bailey*, 32 Kan. 83, 3 Pac. 769.)

*1. Preliminary examination — proceedings construed as a waiver.*

The second error assigned is that the information charged murder in the first degree in two different forms, and on that ground a motion to quash was made. In the first part of the information an attempt to ravish is alleged, but it is not stated that the attempt to ravish caused her death. All the facts and circumstances from the first assault and attempt to ravish to the throwing of the body into the well are set out at con-

*2. Information not obnoxious to a motion to quash.*

siderable length in the single count of the information. It appears to have been a single and continuous transaction, and although murder had been charged in briefer and general terms, proof of all that occurred there was competent and must necessarily have been brought out upon the trial. The defendant was not prejudiced by the fullness of the averments, and we think there was no such duplicity in the information as to make it obnoxious to the motion to quash.

The showing made upon an application for a change of venue did not warrant the court in granting it, and
3. Service on jurors on Sunday—examination. the fact that some of the persons who were drawn as jurors were served with process on Sunday, and that they were excluded from the court-room while others were being examined as to their qualifications to sit as jurors, did not disqualify them for jury service, nor in any way prejudice the rights of the defendant.

It is next contended that incompetent jurors served upon the jury after having been challenged for cause
4. Qualifications of jurors—opinions and impressions. by the defendant. The one who approached most closely to the line of incompetency was J. W. Means. He had read newspaper accounts of the killing of the girl and of the charge that the defendant had killed her. He testified, among other things, that at the time he had accepted and assumed the statements which he read and heard to be true. However, upon final examination, he stated that he had not formed or expressed an opinion as to the guilt or innocence of the defendant, and had then no definite opinion on the question; that what he had read and heard had created no more than an impression—such an impression as one gets from reading a newspaper statement. Fixed and positive opinions disqualify (*The State v. Start*, 60

15—62 KAN.

Kan. 256, 56 Pac. 15), and not mere impressions obtained from newspaper reports, slight and fugitive in character, which do not indicate a condition of mind that precludes a fair and impartial examination of the facts as presented in the testimony. (*The State v. Medlicott*, 9 Kan. 257.) We cannot expect to find intelligent jurors who have not heard or read of such an offense when committed in the community in which they live; men who are wholly void of information and entirely unimpressed by a report of the tragedy. A fair-minded person who, from rumors and newspaper reports, has gained only light impressions from what he has heard and read, and which will not weigh in the consideration of the testimony, is not within the prohibition of the statute excluding those who have formed or expressed an opinion on the issue or material facts to be tried. (Gen. Stat. 1897, ch. 102, § 203 ; Gen. Stat. 1899, § 5455.) When the oral argument was concluded we had grave doubts as to the competency of this juror, but a reading of the whole examination satisfies us that his condition of mind was such that he would fairly consider the case, and that when the statutory tests were applied he was not disqualified.

Proof of confessions made by the defendant was received in evidence over his objections, and upon these rulings error is assigned. About the time of his arrest he was closely questioned by the sheriff, who believed the defendant was connected with the commission of the offense, and before admitting his guilt he was told that some of his prior statements had been found to be untrue. He finally acknowledged his guilt to the sheriff, giving the circumstances in considerable detail, and he afterward repeated the confession to a number of

5. Confessions— competency as evidence.

other persons.  He knew that suspicion was directed toward him, and that there was considerable excitement in the community because of the brutal character of the crime, but the sheriff, to whom the confession was first made, testified that it was not given by reason of any threat made or promise held out.  While the defendant claimed that he was induced by the pressure of fear and hope to make the admission, the sheriff states that he told the defendant that he believed the defendant knew who committed the offense, and that he would better tell all he knew about it; that if he was guilty it would be better for him to admit the truth, and that if he was innocent he should stick to it regardless of the suspicion against him, and that he, the sheriff, would protect him.  It is claimed, and the defendant testified, that hope was held out to him that the punishment for the offense would be confinement in the reform school or reformatory, but this is expressly denied by the sheriff, although he does state that in response to an inquiry by the defendant he explained to him the character of those institutions.  It is well settled that an extra-judicial confession will not be received in evidence unless it has been freely and voluntarily made.  If it has been extorted by fear or induced by hope of profit, benefit, or amelioration, it will be excluded as involuntary.  However, mere advice or admonition to the defendant to speak the truth, which does not import either a threat or benefit, will not make a following confession incompetent.  According to the testimony of the sheriff, the confession was admissible ; and the fact that the defendant confessed so freely and frequently to others at different places and times and under varying circumstances appears to sustain the sheriff.

Complaint is made of rulings of the court in charg-
ing the jury.   In one instruction the jury were told
that "the state is relying partly on what is known as
circumstantial evidence," and in another
part of the charge the court spoke as
though both direct and circumstantial
evidence had been submitted to the jury.   It is con-
tended that the testimony was wholly circumstantial,
and that the assumption that there was direct evidence
was misleading and prejudicial.   While the classifica-
tion of the testimony was of little consequence in this
case, it can hardly be said that the confessions made
were to be treated as circumstantial evidence.   They
are direct in the sense that the information is com-
municated by the defendant himself, who has actual
knowledge of the facts.   Circumstantial or presump-
tive evidence is that which shows the existence of
one fact by proof of the existence of others from
which the first may be inferred.   The defend-
ant here had actual knowledge of his connection
with the killing of the girl, and his statement
went directly to the main fact to be established.
In another part of the charge, where the court
was describing the elements of the crime, the
disjunctive "or" was used between the words pre-
meditation" and "deliberation," but in the connec-
tion in which it was used it could not be misleading,
as the whole charge set out in particular the ingredi-
ents of the offense, and instructed that the jury could
not convict the defendant unless all were establish'ed
to the satisfaction of the jury and beyond a reasonable
doubt.   Many instructions were requested which were
not given, but those given so completely covered the
case that there are no good grounds for complaint.

No error was committed by the court in declining

*6. Confession con-
strued as direct
evidence.*

to instruct the jury on murder in the second or any of the lower degrees of the crime. The charge of the court should be applicable and limited to the facts in evidence. The court is never required to state rules of law, however correct in the abstract, which have no relevancy to the case before it. The testimony in the present case shows beyond question that the defendant was either guilty of murder in the first degree or innocent. If his own statement, so frequently made, is true, he is guilty of murder in the first degree; if it is not true, he should be acquitted. This was the view taken by the court, and it is one which is fully justified by the testimony.

*7. Instruction as to degrees of offense refused.*

Another objection is made to the sentence, which required that the defendant be confined in the penitentiary for a period not less than one, year, and until the death-warrant was signed, when he should suffer death. The defendant was less than sixteen years of age when the offense was committed, and the statute provides that "whenever any person under the age of sixteen years shall be convicted of any felony, he shall be sentenced to imprisonment in a county jail not exceeding one year, instead of confinement and hard labor, as prescribed by the preceding provisions of this act." (Gen. Stat. 1897, ch. 100, § 367; Gen. Stat. 1899, § 2253; Crimes Act, § 299.) It is argued that the words "any felony," used in the section quoted, mean every felony, and necessarily include murder in the first degree, or any other degree, and that therefore the only punishment which could be imposed on the defendant was confinement in the county jail not exceeding one year. There can be little doubt about the interpretation of the provision. The statute expressly provides

*8. Convict under sixteen— sentence.*

that persons convicted of murder in the first degree shall suffer death, and that was the punishment imposed by the sentence in this case. The punishment provided in the quoted section is a substitute for confinement and hard labor as prescribed by the preceding provisions of the act; and as confinement and hard labor are never imposed as punishment for murder in the first degree, it would seem clear that it is not one of the felonies the punishment for which is "prescribed by the preceding provisions of this act." The statutory provisions were borrowed from the Missouri code, and the supreme court of that state, in construing the provisions, said :

"This section seems capable of but one construction, and that is to require imprisonment in a county jail as a substitute for imprisonment in the penitentiary where such offenses as were punishable by imprisonment in the penitentiary have been committed by a youth under sixteen. A felony punishable by death is not within the meaning or letter of the statute." (*The State v. Barton*, 71 Mo. 288 ; *The State v. Adams*, 76 id. 355 ; *The State v. Schmidt*, 136 id. 644, 38 S. W. 719.)

The subsequent statutory provision, enacted in 1872, which provides that a person sentenced to the penalty of death shall not be executed until the time is fixed for his execution by the governor, and requiring him to be confined in the penitentiary until the death-warrant is issued, does not operate to repeal the statute prescribing punishment for murder in the first degree, Nor does it modify the sentence of the law. (*The State v. Crawford*, 11 Kan. 32.) The latter statute, chapter 166, Laws of 1872, is in the nature of a statutory direction to the warden as to the execution of the sentence, and not a modification of the penalty which the

law imposes. (*In re Dyer, Petitioner*, 56 Kan. 489, 43 Pac. 783.)

The sufficiency of the evidence is challenged, but on that question there is no trouble. In our view, it abundantly sustains the verdict, and an analysis of the same is not necessary. Some other objections are urged which do not seem to require special attention, and we find nothing in the record which would justify the setting aside of the verdict or the reversal of the judgment. The judgment is affirmed.