The State v. Bridges.

THE STATE OF KANSAS V. EDWARD BRIDGES.

1. KILLING, *Intentional, Willful, Deliberate, and Premeditated.* Where an information charges that the defendant, armed with a deadly weapon, known as a revolver, (the exact description of which cannot be given,) loaded with gunpowder, leaden balls, and percussion, then and there held in the hand of defendant, on or about the 4th day of April, 1882, at the county of Chase and state of Kansas, then and there being, did then and there feloniously, willfully, intentionally, deliberately, premeditatedly, with felonious intent and with malice aforethought, shoot, kill and murder one B. with the aforesaid deadly weapon then and there held in his hand, by inflicting two mortal wounds, either of which was fatal, with the aforesaid deadly weapon held in the hand of the defendant, *held,* that the said information charges the killing of B. was intentional, willful, deliberate, and premeditated.

2. REASONABLE DOUBT, *Not Clearly Defined.* The court in defining the phrase "reasonable doubt" instructed the jury as follows: "The words 'reasonable doubt' mean what they imply; that is, that the doubt must be a reasonable one, such a doubt as might exist in the mind of a man of ordinary prudence when he was called upon to determine which of two courses he would pursue in a matter of grave importance to himself, when two courses are open to him, and the taking of one would lead to a different result from the taking of the other, and it would be impossible for him to determine as to which of the two results would be most advantageous to him." *Held,* The explanation not sufficiently clear or intelligible to direct or benefit the jury.

3. REASONABLE DOUBT *is What.* If the court deems it necessary in a criminal action to define or explain the phrase "reasonable doubt" to a jury, the following is as clear as any: "A reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge; that is, to a certainty that convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it."

4. MURDER; *Erroneous Judgment; New Trial.* Where a verdict finding a defendant guilty of murder in the second degree is challenged in a motion for a new trial, upon the ground that it is not sustained by sufficient evidence, and the district judge announces that he declines to look into the evidence or pass upon its sufficiency, and then overrules the motion *pro forma,* and the evidence in the case is greatly conflicting and about equally balanced, *held,* that the rendering of the judgment upon the verdict by the trial judge without his approval thereof is in such a case

a material error, and one for which the judgment must be reversed and a new trial granted.

## Appeal from Chase District Court.

AT the May Term, 1882, of the district court, C. N. S., judge *pro tem.*, presiding, *Edward Bridges* was convicted of murder in the second degree, and sentenced to the state penitentiary for the term of ten years, from which judgment he appeals. The opinion contains a sufficient statement of the facts.

*Buck & Feighan,* and *Cunningham & McCarty,* for appellant.

*Thos. H. Grisham,* county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: The appellant was convicted of murder in the second degree, at the May term, 1882, of the district court of Chase county. He was sentenced to the penitentiary of the state for the term of ten years; from that conviction he has appealed to this court.

I. It is claimed that the information upon which the appellant was tried did not charge murder either in the first or second degree. The information alleged, among other things:

"That on or about the 4th day of April, 1882, one Ed. Bridges, Ben. Ray, and Alexander Blakemore, within the county of Chase and state of Kansas, and within the jurisdiction of this court, armed with certain deadly weapons known as revolvers, the exact description of which cannot be given, loaded with gunpowder, leaden balls and percussion, then and there held in the hands of Ed. Bridges, Ben. Ray, and Alexander Blakemore, at the time and place aforesaid, to wit, on or about the 4th day of April, 1882, at the county of Chase and state of Kansas, there and then being, did then and there feloniously, willfully, intentionally, deliberately, premeditatedly, with felonious intent and with malice aforethought, shoot, kill and murder one George Babb with the aforesaid deadly weapons, then and there held in their hands, by inflicting two mortal wounds, either of which was fatal, did, with the aforesaid deadly weapons, held in the hands of

the aforesaid Ed. Bridges, Ben. Ray, and Alexander Blakemore, discharge two leaden balls into the body of George Babb, one taking effect in the right breast just below the nipple, ranging diagonally through the body and lodging in the heart; the other taking effect to the right of the spinal column, passing through the right kidney and through the liver, lodging in the muscular tissues of the breast, either wound being fatal. And the aforesaid George Babb, from the effects of the aforesaid mortal wounds received at the hands of the aforesaid Ed. Bridges, Ben. Ray, and Alexander Blakemore, by the means as aforesaid, and at the time and place aforesaid, to wit, on or about the 4th day of April, 1882, at the county of Chase and state of Kansas, the aforesaid George Babb did languish, and languishing did live until on or about the 8th day of April, 1882, when the aforesaid George Babb did die from the effects of the aforesaid mortal wounds received at the hands of the aforesaid Ed. Bridges, Ben. Ray, and Alexander Blakemore, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Kansas."

Counsel, criticising the information, contend that it is not clear therefrom that the appellant intended to kill. We think otherwise; nor do we think that the word "shoot" ought to be treated as surplusage. As it is alleged "that the appellant did feloniously, willfully, intentionally, deliberately, premeditatedly, with felonious intent and with malice aforethought, shoot, kill and murder George Babb with the aforesaid deadly weapons," the information charged a willful, deliberate and premeditated killing, and was sufficient as an information for murder in the first degree. Being sufficient as an information for murder in the first degree, it was necessarily sufficient to embrace the conviction of murder in the second degree, as a conviction can lawfully be had for any degree of killing lower than that charged in the information. ( *The State v. Huber*, 8 Kas. 447.)

II. In its general charge, the court said this:

"The words 'reasonable doubt' mean what they imply; that is, that the doubt must be a reasonable one, such a doubt as might exist in the mind of a man of ordinary prudence, when he was called upon to determine which of two courses

he would pursue in a matter of grave importance to himself, when two courses are open to him, and the taking of one would lead to a different result from the taking of the other, and it would be impossible for him to determine as to which of the two results would be most advantageous to him."

This direction, or rather explanation, is difficult to understand, and certainly could not have informed or benefited the jury in any respect.    It would have been better to have given no explanation of the phrase "reasonable doubt," than to have used the language quoted.    Indeed, "it has often been said by courts of the highest standing, that perhaps no definition or explanation can make any clearer what is meant by the phrase 'reasonable doubt' than that which is imparted by the words themselves." ( *The State v. Kearley,* 26 Kas. 87.)

III.  If an explanation is given, we think the following, approved by the supreme court of California, as clear as any;

"A reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge; that is, to a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it." ( *People v. Cadd,* 14 Reporter, 200.)

Counsel for the state, in answer to the criticism concerning the explanation of the words "reasonable doubt," cites *The State v. Kearley,* supra, and claims the direction given in the case at bar is almost the identical language used in that case. Counsel in this is mistaken, because there the language is, " to exclude such doubt, the evidence must be such as to produce in the minds of prudent men such certainty that they would act on the conviction without hesitation in their own most important affairs."    Upon that explanation, all that we said was, " the definition given by the court did not prejudice the defendant by narrowing the scope and import of that familiar phrase."

IV. The motion to set aside the verdict, and for a new trial, embraced among other grounds, "that the verdict was

not sustained by sufficient evidence." The district judge did not approve of the verdict of the jury as is usually done by trial courts in similar cases when such a motion is overruled, but expressly announced that he overruled the motion *pro forma*, and declined to look into the evidence or pass upon its sufficiency. . This was serious and grievous error. It was a refusal on the part of the trial court to perform its bounden duty, alike unjust to this court and the appellant. When a verdict is challenged upon the ground alleged in this case, the judge, who has the same opportunity to hear and see the witnesses as the jury, should declare his approval or disapproval of the verdict, and if he refuses to do this by overruling the motion *pro forma*, and thereby attempting to transfer the whole question to the supreme court, he trifles with the sacredness of his duty. · A party is deprived by such action of a review and consideration of the evidence by the court hearing and seeing the witnesses. This court does not have the same opportunity as the trial judge for forming a just opinion of the credence to be placed in the various witnesses, as testimony on paper is not like testimony from living lips. Even in a civil case, when the judgment of a trial judge tells him that the verdict is wrong, that whether from mistake, or prejudice, or other cause, the jury have erred and found against the fair preponderance of the evidence, then no duty is more imperative than that of setting aside the verdict and remanding the question to another jury. (*Rld. Co. v. Kunkel*, 17 Kas. 145.) In a criminal case this duty is still more important, and a trial judge ought never to sentence a prisoner upon a verdict which is properly challenged, unless he is willing to declare that the verdict of the jury should be accepted as just. The appellant was charged with a capital offense; the verdict of the jury was that he was guilty of murder in the second degree; it appears from the record that the evidence was greatly conflicting; six witnesses testified that the appellant had a pistol, and shot; six testified that he was unarmed, and did not shoot. All, we believe, agree that other parties present at the time did shoot. When the shoot-

ing was over, it was found that the appellant was shot through the left arm and across the front of his body; that one Walker was shot in one of his fingers, and that the deceased had received two shots, either of which was fatal. Under these circumstances, the action of the trial court in refusing to perform its duty upon the hearing of the motion for a new trial, and in consigning to us the questions therein involved, without its approval or disapproval of the verdict, was in our opinion a fatal error, and so unfair and prejudicial to the rights of the appellant that the judgment should be reversed, and a new trial granted; and it is so ordered.

All the Justices concurring.