No. 75,006

STATE OF KANSAS, *Appellee,* v. EDGAR BANKS, *Appellant.*

(927 P.2d 456)

Opinion filed November 1, 1996.

*Steven R. Zinn,* deputy appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Michael A. Russell*, assistant district attorney, argued the cause, and *Nick Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Edgar Banks appeals his jury convictions of first-degree murder, K.S.A. 21-3401, aggravated robbery, K.S.A. 21-3427, and unlawful possession of a firearm, K.S.A. 1994 Supp. 21-4204(b), contending his confession was unlawfully induced by a law enforcement promise and a mistrial should have been granted when the prosecutor improperly attempted to define reasonable doubt during closing arguments.

This case arises out of the robbery and shooting of Marcus Tucker on August 23, 1994, outside the Paradox Club he co-owned in Kansas City, Kansas. He was killed by a single shot fired at close range.

The police found a black ball cap believed to be owned by Banks about 38 feet from Tucker's body. Upon learning he was a suspect, Banks went to the police station and, after being properly *Mirandized*, confessed to the murder during an interrogation. He told police his gun accidentally discharged while he was attempting to rob Tucker. After the shooting, Banks said he used the $160 he obtained to buy drugs. The defense unsuccessfully sought the suppression of the confession.

Banks was tried along with Bernard Ingram, who was also accused in connection with the crime. At trial, Samuel Crumbles testified under immunity that he had talked to Banks and Ingram a few hours before the robbery. Banks had asked Crumbles for a pistol because he wanted to rob someone. Crumbles testified he gave Banks a gun he was holding for someone else.

Jeanetta Taylor testified she saw Banks and another man approach Tucker as he walked toward his car with a pouch under his arm. She saw Banks shoot Tucker, the other man take his pouch, and both run away.

Jerome Lewis testified he saw Banks and Ingram outside Tucker's club. Banks told Lewis he had a gun. Banks told him to get the women Lewis was with away because he wanted to "take care

of business." Later, Lewis heard a shot and turned to see Tucker fall near Banks. Banks then ran away.

In closing argument, Banks' counsel conceded that Banks' gun had discharged during the course of a robbery, but argued the bullet that killed Tucker must have been fired by some unknown third person at the same time Banks' gun accidently discharged.

The jury convicted Banks of all charges but was unable to reach a verdict against Ingram. Banks was sentenced to life imprisonment for the first-degree murder conviction, 51 months for the robbery conviction, and 9 months for the weapons violation, with the sentences to run consecutively. Banks appeals, raising three issues, which we will consider in order.

*Did substantial competent evidence support the trial court's decision not to suppress Banks' confession on the basis it was involuntary because he was told his cooperation would be noted by the authorities?*

The evidence before the trial court at the suppression hearing established the following circumstances surrounding Banks' confession:

On August 25, 1994, Banks voluntarily came with his mother to the Detective Bureau in Kansas City, Kansas, after officers had mounted a search to locate him. Detective Michael Shomin and Detective Louis Jones interviewed Banks. The interview commenced with Shomin reading Banks his *Miranda* rights, which Banks acknowledged he understood. Shomin testified he believed Banks did indeed understand his rights and was not then under the influence of drugs or alcohol. Shomin testified there were no threats, inducements, or coercions involved in obtaining Banks' statement. At no time did Banks request an attorney.

Banks initially denied any knowledge or participation in the shooting of Tucker. Shomin then asked if Banks would consent to giving samples of hair, blood, and saliva. Banks asked why Shomin wanted the samples. Shomin told him that near the victim's body, the police had found a black ball cap which Shomin wanted to test for hair or perspiration. Banks refused to give samples. He became

nervous and apprehensive, and started asking questions about the ball cap.

Shomin told Banks he believed he had sufficient information from the police investigation to obtain a warrant for the samples and he would get such a warrant. He then left the room, asking another officer, Ron Kellogg, to sit with Banks while he obtained a warrant.

Kellogg testified that they engaged in no conversation for about 10 minutes, but when Banks looked at him, they began to converse about the victim. Banks repeatedly looked down, put his face in his hands, and at one point began crying.

Kellogg then suggested that he thought the ball cap found at the scene belonged to Banks, that it was being analyzed for hair fibers, that Shomin was getting a search warrant for Banks' hair fibers, and that if the hair matched those from the ball cap, Banks had a problem. Kellogg then said, "The only thing that you can do is help yourself and it will be noted by the authorities that you did cooperate."

Kellogg testified he promised Banks nothing in return for his statement and he had no authority to make any promises. Banks did not immediately respond, but looked down at his hands and started sobbing. When he looked back at Kellogg, Kellogg said, "Iggy, you were involved in that, weren't you?" Banks responded, "Yes, sir."

Kellogg then confirmed with Banks that Shomin had read him his rights, and he offered to repeat them, which Banks declined. Kellogg then asked, "Iggy, what was your involvement?" Banks replied, "I was the shooter." Banks then told Kellogg more details of the crime and was very cooperative. Kellogg testified Banks appeared to be very intelligent and unimpaired by drugs or alcohol. He stated Banks never requested an attorney.

When Shomin returned with a warrant, Kellogg told him Banks had changed his statement and admitted that he shot Tucker. Shomin then took a recorded statement from Banks in which Banks admitted accidently shooting Tucker in the course of a robbery. Again, Banks was informed of his rights and stated he nevertheless wanted to give a voluntary statement. The statement began at 2:55

p.m., 3 hours and 18 minutes after the initial interview began. Banks said no one had made any threats or promises inducing him to give a statement and he was doing so of his own free will.

Prior to giving his statement, Banks did not indicate he wanted to leave, request anything to eat or drink, request an attorney, or ask to speak to his mother, who had come to the police station with him.

The facts as set forth above were developed in a *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964), hearing before the Honorable David Lamar. Because of Judge Lamar's untimely death, a transcript of the hearing was obtained, briefs submitted, and arguments made to Judge Daniel Duncan, who denied the motion to suppress and held that Banks had been timely advised of his rights before making the statement.

The admissibility of a criminal confession into evidence as an exception to the hearsay rule is set forth in K.S.A. 60-460, which states:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(f) *Confessions.* In a criminal proceeding as against the accused, a previous statement by the accused relative to the offense charged, but only if the judge finds that the accused (1) when making the statement was conscious and was capable of understanding what the accused said and did and (2) was not induced to make the statement (A) under compulsion or by infliction or threats of infliction of suffering upon the accused or another, or by prolonged interrogation under such circumstances as to render the statement involuntary or (B) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same."

In addition, "[t]he U.S. Constitution, under the Fifth Amendment, guarantees the accused the privilege against self-incrimination from statements that are not freely and voluntarily given or are given under the threat of force or compulsion." *State v. Waugh,* 238 Kan. 537, 540, 712 P.2d 1243 (1986).

In *State v. Waugh*, Justice Lockett, citing *State v. Soverns*, 215 Kan. 775, 777, 529 P.2d 181 (1974), stated:

"Under the Fourteenth Amendment due process voluntariness test, a case-by-case evaluation approach is employed to determine whether coercion was impermissibly used in obtaining a confession. Coercion in obtaining a confession from an accused can be mental as well as physical. In determining the voluntariness of a confession of crime, the question in each case is whether the defendant's will was overborne at the time of the confession; if so, the confession cannot be deemed the product of a rational intellect and a free will." 238 Kan. at 541.

In *State v. William*, 248 Kan. 389, Syl. ¶¶ 11, 12, 807 P.2d 1292, *cert. denied* 502 U.S. 837 (1991), the rule was again set forth that the voluntariness of a confession is determined from the totality of the circumstances, with the burden of proving admissibility on the State by a preponderance of the evidence. *William* further held that when a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely and voluntarily given, and admits the statement into evidence at the trial, this court should accept that determination if it is supported by substantial competent evidence. 248 Kan. 389, Syl. ¶ 13.

When, after a hearing, the trial court has determined the confession was voluntary, the appellate court will not reweigh the evidence. *State v. Perkins*, 248 Kan. 760, 765-66, 811 P.2d 1142 (1991).

In deciding whether the confession is a product of a rational intellect and free will, the question is whether such free will was overborne at the time of the confession. *State v. Strauch*, 239 Kan. 203, Syl. ¶ 3, 718 P.2d 613 (1986). The factors relevant in determining whether a statement is the product of the free and independent will of the accused include the accused's mental condition, the duration and manner of interrogation, the ability of the accused on request to communicate with the outside world, the accused's age, intellect, and background, and the fairness of officers in conducting the interrogation. *State v. Cady*, 254 Kan. 393, 404, 867 P.2d 270 (1994). A statement may be considered voluntary if the accused was not deprived of his free choice to admit, deny, or

refuse to answer. *State v. Zimmerman*, 251 Kan. 54, 62, 833 P.2d 925 (1992).

Banks' specific argument on appeal, that his confession was rendered involuntary because Kellogg stated "it will be noted by the authorities that you did cooperate," is not persuasive.

In *State v. Johnson*, 253 Kan. 75, 853 P.2d 34 (1993), a finding of voluntariness was upheld on appeal when a law enforcement officer stated he would go to the district attorney and tell him if the person was cooperating. After reviewing the record, we found that the officer did not bargain with or promise Johnson anything either directly or by implication.

In *State v. Harwick*, 220 Kan. 572, 575-76, 552 P.2d 987 (1976), we held the mere offer to talk to the district attorney by the officer who interviewed the defendant does not make a confession involuntary. The *Harwick* opinion relied in part on *People v. Hubbard*, 55 Ill. 2d 142, 302 N.E. 2d 609 (1973), where the court decided the mere promise by a detective to inform the prosecuting attorney of the defendant's cooperation did not render the defendant's confession inadmissible.

In *State v. Perkins*, 248 Kan. 760, we held a law enforcement officer's request for truth and statement that "a lot of it depends on the help that you [are] willing to put out for yourself" did not amount to an abuse of police authority, nor was it a threat or a promise. We viewed the officer's actions as an attempt to calm an upset individual, which did not make the confession involuntary. We refused to reweigh the evidence supporting the trial court's determination of voluntariness.

A similar situation exited in *State v. Strauch*, 239 Kan. at 211-13, where the use of a "good guy, bad guy" technique by two detectives who made no statements or promises was not deemed to be coercive or to render the confession involuntary.

In none of these cases were statements similar to those made by Kellogg found to be coercive or of such nature as to cause the accused to believe he would obtain any significant benefit in exchange for his statement. All of the substantial evidence in this case supports the trial court's conclusion that Banks' confession was voluntary.

Banks was 26 years old at the time of the statement. He appeared to be intelligent and unimpaired by drugs or alcohol. He was properly *Mirandized* and never requested an attorney, food, water, or any contact with any other person. The police interrogation lasted only slightly more than 3 hours, and Kellogg questioned Banks in a conversational tone without raising his voice. Kellogg testified that when Banks was asked whether his statement was given in exchange for any promises, Banks said, "No threats or promises were made to him."

There was never any promise of a benefit sufficient to induce the confession. See *State v. Brown*, 217 Kan. 595, 602, 538 P.2d 631 (1975). In order to render a confession involuntary as a product of a promise of some benefit to the accused, including leniency, the promise must concern action to be taken by a public official, the promise must be such as would likely cause the accused to make a false statement to obtain the benefit of the promise, and the promise must be made by a person whom the accused reasonably believed to have the power or authority to execute it. *State v. Norris*, 244 Kan. 326, Syl. ¶ 6, 768 P.2d 296 (1989). There is absolutely no evidence of any such promise or benefit made in this case.

The trial court was not compelled to find the confession was involuntary just because it may have followed a statement by Kellogg that Banks' cooperation would be noted by authorities. This statement is not of the type likely to induce a false confession. In addition, the fact that an investigator exhorts an accused to speak the truth or asks the accused to confess will not exclude the confession or cause it to be deemed involuntary. *State v. Newfield*, 229 Kan. 347, 359, 623 P.2d 1349 (1991).

Based upon our standard of review, we hold there was substantial competent evidence to support the trial court's finding that the confession in this case was voluntary.

*Did the trial court commit reversible error by refusing to grant a mistrial when Banks objected to the State's attempt to define "reasonable doubt" in closing argument?*

In the State's final closing argument, the following exchange took place:

"[MR. RUSSELL:] My burden is the burden that you must consider this case beyond a reasonable doubt. It is not beyond any doubt, it is not beyond the shadow of a doubt, it is beyond a reasonable doubt.

"Reasonable doubt means if you are going to say these men are not guilty of something, you have to give a reason for it.

"MR. DONHAM: Judge, can we approach?

"THE COURT: Come on up.

"MR. DONHAM: Judge, I find it that very objectionable. What he essentially is characterizing is we have to present some sort of alternate proof in order for them to have a reasonable doubt in order to carry his burden. I move for a mistrial.

"THE COURT: It is also dangerous to start telling the jury what reasonable doubt means, because the legislature and the courts have said what reasonable doubt means, and nothing defines it better than the instructions. But everybody ought to be cautioned. It is too late to caution you fellows [the defense attorneys] but the State should be cautious. I am not going to sustain the objection at this time."

This issue raises the question of whether the trial court abused its discretion in its refusal to grant a mistrial after the above statement.

The first two sentences of the prosecutor's statement were proper, but the last sentence, "Reasonable doubt means if you are going to say these men are not guilty of something, you have to give a reason for it," was improper. Such, however, is not the basis for our decision. The issue we must decide is whether the trial court erred in refusing to grant a mistrial based upon this one isolated statement. We hold that it did not.

K.S.A. 22-3423(1)(c) authorizes the trial court to order a mistrial where "prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." Declaration of a mistrial is a matter entrusted to the trial court's discretion and will not be disturbed on appeal absent a clear showing of abuse of discretion. *State v. Mayberry*, 248 Kan. 369, Syl. ¶ 8, 807 P.2d 86 (1991).

"Judicial discretion is abused if judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only if no reasonable person would take the view adopted by the trial court. If reasonable persons could differ regarding the propriety of the action taken by the trial court, it cannot be

said that the trial court abused its discretion." *State v. Warden*, 257 Kan. 94, 116, 891 P.2d 1074 (1995).

We cannot conclude that the trial court abused its discretion here or that reversal is otherwise required. The statement of which Banks complains was not a statement sanctioned by the court or included in the jury instructions, but was part of the State's closing arguments. The trial court explicitly instructed the jury as follows:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty until you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant guilty."

It is true, as Banks argues, that this court has long held that a jury instruction defining reasonable doubt is unnecessary. See *State v. Mack*, 228 Kan. 83, 88, 612 P.2d 158 (1980); *State v. Bridges*, 29 Kan. 138, 141 (1882); PIK Crim. 3d 52.04 ("The Committee recommends that there be no separate instruction defining reasonable doubt."). However, contrary to Banks' argument, it has also long been held that the giving of such an instruction is not erroneous where the instruction is a restatement of judicially approved definitions. See *State v. Johnson & Underwood*, 230 Kan. 309, 311, 634 P.2d 1095 (1981); *State v. Ling*, 91 Kan. 647, 652, 138 Pac. 582 (1914). In addition, the instruction given to the jury by the court does not contain any alleged infirmity.

Banks further argues that the definition the prosecutor used improperly implies the jury must find him guilty unless it is able to articulate a reason for finding him not guilty. We agree the prosecutor's statement was improper; however, it does not require the court to declare a mistrial. When the prosecutor's argument is considered in its entirety along with the language immediately preceding the objectionable sentence, the statements fully indicated a recognition that the burden of proof falls on and remains with the State.

The State's attempt to justify the statement as being similar to ones approved in *State v. Osbey*, 213 Kan. 564, 572, 517 P.2d 141 (1973), and *State v. Mae McLaughlin*, 207 Kan. 584, 588, 485 P.2d 1352 (1971), is not persuasive. To the extent this court found it proper in *Osbey* and *McLaughlin* to define reasonable doubt as "such a doubt as a juror is able to give a reason for," we specifically disapprove that language in those opinions.

The prosecutor's argument was not so grossly and flagrantly improper as to prejudice the jury against Banks and deny him a fair trial in light of all the other substantial and compelling evidence going directly to his guilt. See *State v. McKessor*, 246 Kan. 1, Syl. ¶ 7, 785 P.2d 1332, *cert. denied* 495 U.S. 937 (1990). We hold the trial court did not abuse its discretion in refusing to grant a mistrial.

*Does the failure of the trial court to instruct the jury that evidence of Banks' prior conviction was introduced for the limited purpose of establishing an element of the K.S.A. 1994 Supp. 21-4204(a)(3) charge of unlawful possession of a firearm after imprisonment for a felony, in the absence of a request for such an instruction, constitute reversible error?*

This court has recently considered whether the failure of a trial court to give a limiting instruction regarding evidence of a felony conviction constitutes reversible error. In *State v. Denney*, 258 Kan. 437, 441-446, 905 P.2d 657 (1995), we held that when evidence of a prior crime is introduced for the limited purpose of establishing an element of the current crime, and the defendant requests a limiting instruction, the trial court should give the instruction, under K.S.A. 60-406. However, we found the error in *Denney* to be harmless beyond a reasonable doubt in part because of the substantial compelling evidence of guilt.

In the case we now consider, Banks did not request a limiting instruction, and our situation is the same as in *State v. Knowles*, 209 Kan. 676, Syl. ¶ 3, 498 P.2d 40 (1972), where it was held: "Where proof of a previous conviction is an essential element of a crime charged, failure to give an instruction limiting the purpose for which such conviction may be considered is not reversible error in the absence of a request." Here, no such request was made, and

the rule of *Knowles* governs this issue. Banks' argument is without merit.

Affirmed.

ALLEGRUCCI, J., concurs in the result.