Gardner, J.,
dissenting: I respectfully dissent. I agree with the majority’s conclusions on the first two issues but do not agree that the post-Miranda statements should be suppressed. I would affirm.

Our scope of review is substantial competent evidence

Our scope of review on this issue is well established.
“[T]he determination that a statement was freely, voluntarily, and intelligently given will be upheld if there is substantial competent evidence to support such a conclusion. In making tire factual review, the appellate courts will not reweigh the evidence and will give deference to the factual findings of the trial court. The legal • conclusion drawn from those facts is subject to de novo review.” State v. Holmes, 278 Kan. 603, 612, 102 P.3d 406 (2004).
Substantial evidence in this case supports the conclusion that Guein’s statement that he had purchased the marijuana for $25 and intended to sell it to Gresham for $50 was freely, voluntarily, and intelligently given. I would reach the same conclusion, however, if our review of the evidence were de novo.

Several factors guide the determination of voluntariness

In considering the totality of the circumstances, we examine both the conduct of the officers and the characteristics of the accused. The majority’s opinion, however, makes no effort to apply the factors it concedes should be considered in determining whether Guein’s *416 statement was voluntary. Those factors are: Guein s mental condition; the manner and duration of the interrogation; Guein’s ability to communicate on request with the outside world; Guein’s age, intellect, and background; the fairness of the officers in conducting the interrogation; and Guein’s fluency with the English language. State v. Stone, 291 Kan. 13, 21, 237 P.3d 1229 (2010). Although these factors are nonexclusive, they are not to be ignored.
We are not to weigh the factors in the balance, one against another, to see whether the scales tilt in favor of or against voluntariness.
““‘[T]hese factors are not to be weighed against one another . . . , with those favorable to a free and voluntary confession offsetting those tending to the contrary. Instead, the situation surrounding the giving of a confession may dissipate the import of an individual factor that might otherwise have a coercive effect. [Citation omitted.] Even after analyzing such dilution, if any, a single factor or a combination of factors considered together may inevitably lead to a conclusion that under the totality of circumstances a suspect s will was overborne and the confession was not therefore a free and voluntary act.” [Citations omitted.]”’ State v. Randolph, 297 Kan. 320, 326, 301 P.3d 300 (2013) (quoting State v. Sharp, 289 Kan. 72, 81, 210 P.3d 590 [2009]). .
The totality of the circumstances shows that Guein’s -post-Miranda statements were not coerced but were the product of his free and independent will.
■ Guein s age, intellect, and background
Guein was 27 years old at the time of his arrest. He had graduated from college in 2010 with a Bachelor’s degree in mass communications from Jackson State University. He was bom in Kansas City and lived there until his sophomore year in high school, then graduated from high school in Atlanta, Georgia. He was employed at one or more jobs at the time of his arrest. He had very little experience with police but lived in an area of Kansas City that he admitted some considered to be a “hood area.” He also admitted that he smoked marijuana daily.

Guein s fluency with the English language

The videotape and the trial transcript demonstrate that Guein, a college graduate who grew up in urban areas of the United States, is fluent in English.

*417
Guein s mental condition

Guein does not contend that he had any mental problems, and the evidence reflects none. The videotape demonstrates that Guein was sober and was able to respond appropriately to the officers questions. The officer testified he had no reason to believe Guein was under the influence of drugs or alcohol.

Guein s ability to communicate on request with the outside world

At the time of the post-Miranda questioning, Guein was under arrest and was sitting in the back of the officers vehicle, waiting to go to jail. At some point during that time, Guein told the officer he was nervous and asked if he could call his “lady friend” because she was expecting his return. The officer told Guein they would get everything “squared away” but it would take a few minutes and told Guein to “sit tight.”
Guein was, however, permitted to call his “lady friend” from jail and thus was not held incommunicado. When she asked him what he had been thinking, he responded: “I mean, I smoke, and so a friend asked me, could he just get it from me instead of having to do the run-around and get it from somebody else. I’m like, yeah, that’s cool and I just got caught up in the process.”

The manner and duration of the interview

The officer’s profane statements were made approximately 10 minutes before Guein was given the Miranda warnings and chose to speak. During those 10 minutes, Guein was by himself and was not subject to any statements from anyone. He thus had time to reflect upon his predicament and to consider what was in his best interests. The post-Miranda interview did not include any allegedly coercive statements.
The post-Miranda interview, approximately 10 minutes after the officer’s profane statements, lasted a little over 5 minutes. During that conversation, Guein acknowledged that he had purchased the marijuana for $25 and intended to sell it to Gresham for $50. However, much of the discussion did not directly relate to Guein’s possession of drugs, but to Guein’s possession of a handgun, the procedure for getting out of jail, and the possibility that Guein *418 could become a confidential informant. No protracted questioning occurred, unlike in People v. Quan Gim Gow, 23 Cal. App. 507, 511, 138 P. 918 (1913), where “the repeated questioning of the officers, like the constant dropping of water upon a rock, finally wore through his mental resolution of silence.”
The videotape captures tire cadence, tone, and inflections of the officer’s questions and Gueins responses. That tone is conversational, not confrontational. The officers statements are not loud or threatening, and Guein’s responses are prompt, unwavering, and do not otherwise reflect being intimidated.
The majority apparently finds it suspect that Guein was in handcuffs when questioned. Yet all post-Miranda interrogations necessarily occur only when a defendant is in custody and is thus deprived of his or her freedom in a significant way. Absent other indicia of coercion, the fact that a defendant is handcuffed pursuant to routine arrest procedures during a post-Miranda interview carries little, if any, weight in determining the voluntariness of a statement.
It is also immaterial that before reading Guein his rights, the officer said, “I’ve gotta do it because you’re in handcuffs,” then read the Miranda warnings rapidly. Guein, an intelligent college graduate, stated his understanding of his rights and his desire to speak with the officer immediately after they were read to him, demonstrating no confusion or indecision. Guein never alleges he did not hear or fully understand his rights, nor does the officer’s statement that he had to read them to Guein because Guein was in custody somehow dilute or negate them. Nothing in the manner or duration of the post-Miranda interview is coercive.

The officer s fairness in conducting the interview

Guein alleges no unfairness in the officers post-Miranda interview itself, and the videotape demonstrates none. The record reflects no endeavor to wring out a confession when it was apparent that Guein was not disposed to make one. The officer used no profanity or arguably threatening language during his custodial interrogation.
Instead, the sole alleged unfairness arises from tire officer’s *419 pre-Miranda profanity which the majority finds apparently tainted his post-Miranda questioning. But Guein admitted that he uses the same profane word the officer used, apparently with his friends. And the record shows that Guein used that same profanity in responding to the officers profane statements. See State v. McCullers, 341 N.C. 19, 460 S.E.2d 163 (1995) (finding defendants claim that he was intimidated or coerced by detective’s profanity not persuasive in fight of profanity in defendants own response to question).
Use of profanity is commonplace in our ever-coarsening society, as one judge noted in addressing whether its use constitutes “fighting words”:
“Are we to assume that our society is composed of thin-skinned individuals ready to strike back at the hint of an abusive epithet? No longer are the words of tire rough, coarse and uncivilized confined to their likes. They are part of the working vocabulary of many in our society. To be a member of our society is to be familiar widr them, to overhear them used and endure whatever offensiveness it might cause so long as the situation is not one in which the words become a call to combat. State v. Brahy, 22 Ariz. App. 524, 529, 529 P.2d 236 (1974) (Donofrio,J., dissenting).
Although we do not condone the officer’s use of profanity, given Guein’s background and his use of the identical language, the officer’s language was no more coercive to Guein than had the officer said, “Don’t mess around with me. I won’t mess around with you.”
I thus agree with the majority that the officers use of profanity does not, by itself, render Guein’s statements involuntary. Although our cases have not directly addressed the impact of an officer’s use of profanity, cases from other jurisdictions reflect that profane statements are weighed in the balance and are not necessarily coercive. Cage v. State, 285 Ark. 343, 686 S.W.2d 439 (1985) (finding defendants confession voluntary despite allegation of officer’s use of profanity toward him which did not amount to undue mental pressure); People v. Macias, 2015 IL App (1st) 132039, ¶ 63, 36 N.E.3d 373 (finding defendant’s confession voluntary despite an aggressive, confrontational interrogation that included yelling, profanity, and vulgarity); Kolojaco v. State, No. 14-99-00957-CR, 2000 WL 1752856, at *5 (Tex. App. 2000) (finding officer’s statement *420 about the photo of complainant’s corpse and use of profanity which upset appellant did not rise to the level of coercive conduct that rendered appellants confession involuntary).
The majority, however, finds Guein’s statements coerced or involuntary because the officers profanity "accompanied” three messages: that Weber was going to be asking questions; that Weber expected cooperation when he did so; and that Weber might F— with Guein if he didn’t cooperate. No explanation or citation to authority is offered in support of this unwarranted conclusion.
The first two of these “messages” are innocuous. An officer’s statement to a suspect that the officer is going to be asking questions and expects cooperation is not coercive. Our courts do not find confessions involuntary based on an officer’s encouraging the accused to tell tire truth. State v. Swanigan, 279 Kan. 18, 33-34, 106 P.3d 39 (2005) (asking whether law enforcement’s coercion of an involuntary statement in the first interrogation tainted the voluntary statements obtained in a subsequent interrogation):
“This court has held diat, without more, a law enforcement officer’s offer to convey a suspects cooperation to the prosecutor is insufficient to make a confession involuntary. State v. Banks, 260 Kan. 918, 924, 927 P.2d 456 (1996) (‘it wiE be noted by the authorities that you did cooperate’); State v. Johnson, 253 Kan. 75, 82, 853 P.2d 34 (1993) (law enforcement officer stated he would go to the district attorney and teE him if die person was cooperating); State v. Harwick, 220 Kan. 572, 575-76, 552 P.2d 987 (1976). Likewise, we have declined to find a confession involuntary when the police encourage the accused to tell the truth. State v. Newfield, 229 Kan. 347, 359, 623 P.2d 1349 (1981); State v. Tillery, 227 Kan. 342, 344, 606 P.2d 1031 (1980); State v. Kornstett, 62 Kan. 221, 227, 61 Pac. 805 (1900) (‘mere advice or admonition to tile defendant to speak the truth, which does not import either a threat or benefit, wiE not make a foEowing confession incompetent’).” Swanigan, 279 Kan. at 33-34.
Only the last of the officer’s three “messages” is arguably coercive—the officer’s statements: “Don’t F— around with me and I ain’t gonna F— around with you, okay?” “You don’t screw around with me, I ain’t gonna screw around with you. I’m gonna do what I can to help you out, okay?” For purposes of propriety and convenience, I refer to these as the officer’s “profane statements.” I agree with the majority’s tacit conclusion that the profane statements are not an express threat but disagree that they constitute an implied threat.
*421 The officer testified at trial that by making the profane statements he was only trying to get Guein to be honest with him and drat he felt it was appropriate to use profanity in dealing with a suspected drug dealer. He made the profane statement after telling Guein “now is the time to be honest with me.” After Guein waived his Miranda rights, the officer reiterated that purpose by saying he knew what was going on and didn’t need Guein to tell him, but he wanted to give Guein the opportunity to be honest. As the majority concludes, tire district court apparently credited the officers testimony so we do too; thus, we attribute no nefarious motive to the officer.
At trial, when Guein’s attorney asked the officer what he meant by tire profane statements, the officer explained he meant he had discretion to add charges and could talk to the prosecutors about whether a defendant deserved leniency based on cooperation with police. Pursuant to the authorities noted above, such a statement is not coercive.
The majority misstates the officer’s statement as: if you F— with me, then I toill F— with you. But the majority has interjected the italicized words. The officer never said them. His statement was not phrased as an “if, tiren” conditional threat. Instead, both times the officer made such a statement, he stated it as two independent clauses—once joining the clauses by the word “and,” and once stating them as two separate sentences. He said, “Don’t F— around with me and I ain’t gonna F— around with you.” The officer never said, “I will F— with you.” Instead, he said he wóuld not do so, “I ain’t gonna F— around with you . . . .” Only by transposing the words to their converse and by adding the words “if’ and “then” does the majority find the profane statements implied a threat. One could more reasonably interject the conjunction “because” between the two statements, making it read: “Don’t F— with me because I won’t F— with you.” Neither the words actually stated by the officer, the implications reasonably flowing from them, nor the circumstances accompanying them shows the officer made an implied threat.
The majority reaches even further to find the officer’s profane statements implied a threat of 'physical harm to Guein if he did *422 not answer tire officers questions. That conclusion is not supported by citation to authority interpreting similar language that way, or to any evidence in this case suggesting that conclusion. The only testimony to that effect was Gueins, which the majority properly declined to consider since the district court evidently found it not credible.
Moreover, Guein never argues on appeal that the officer threatened physical harm. Instead, he admits that the officers profane statements “could only mean” something else:
“[T]hese statements could only mean that in exchange for [Guein’s] cooperation Officer Weber would use his official power to benefit Marcus. Whatever Officer Weber intended to provide as quid pro quo, [Guein] properly understood cooperating meant obtaining the benefit of what Officer Web[]er could do to ‘help [him] out.’
“. . . By tliis, [Guein] properly understood, as any reasonable person would, that if he did not confirm the officer’s predetermined conclusions about tire situation the officer would do something that would be bad for [Guein].”
Guein’s brief alludes to the officers “ability to exercise mercy and look the other way” and to his perceived “authority to grant immunity” but does not allege or allude to any negative consequence other than the nebulous “something . . . bad” stated above. We do not address on appeal issues incidentally raised but not argued. In re Rausch, 272 Kan. 308, 327, 32 P.3d 1181 (2001), reinstatement granted 277 Kan. 658 (2004). Here, no threat of physical harm is even mentioned, let alone argued, in Gueins brief. This court should not rediscover arguments that parties have abandoned or create those never raised.
However, even if one reads the profane statements to mean that the officer would somehow punish Guein if he didn’t cooperate, that tactic is solely one factor that cuts against the State. It does not make the confession involuntary per se.
“[W]e fail to see how law enforcement can be required by Miranda to advise [a suspect] of his right to remain silent, and then can be allowed to warn him of punishment for his ‘noncooperation’ when he exercises that right. Accordingly, we need not determine whether this tactic otherwise constitutes a ‘threat’ under K.S.A. 2004 Supp. 60-460(f). On the other hand, we do not regard this tactic as one which makes’the confession involuntary per se, but rather as one factor to be considered in tile totality of circumstances. See, e.g., Tuttle, 650 N.W.2d at 35; Passama, 103 Nev. at 214.” Swanigan, 279 Kan. at 36-37.
*423 Worse tactics commonly withstand allegations of coercion. See, e.g., State v. Harris, 293 Kan. 798, 811, 269 P.3d 820 (2012) (confession may be voluntary even when officers he to defendant during an interview); State v. Wakefield, 267 Kan. 116, 126-28, 977 P.2d 941 (1999) (deceptive interrogation techniques do not establish coercion but are one circumstance that must be viewed in conjunction with the others present to assess totality of the circumstances). See generally Illinois v. Perkins, 496 U.S. 292, 297, 110 S. Ct. 2394, 110 L. Ed. 2d 243 (1990) (“Miranda forbids coercion, not mere strategic deception by taking advantage of a suspects misplaced trust in one he supposes to be a fellow prisoner.... Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda’s concerns.”)- The tactic used by the officer here is not coercive.
The totality of the circumstances shows that Guein s statements were freely and voluntarily made and that his will was not overborne by any implied threat that the officer would somehow punish Guein if he didn’t cooperate. See Sharp, 289 Kan. at 81 (noting dissipation of the import of an individual factor that might otherwise have a coercive effect).

Conclusion

Coercive government activity is necessary to finding that a confession was not voluntary. Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); State v. Dern, 303 Kan. 384, 392, 362 P.3d 566 (2015); State v. Stone, 291 Kan. 13, 32-33, 237 P.3d 1229 (2010); Swanigan, 279 Kan. at 39.
“ ‘The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion. See United States v. Washington, 431 U.S. 181, 187 (1977); Miranda, supra, 384 U.S., at 460. Indeed, the Fifth Amendment privilege is not concerned “with moral and psychological pressures to confess emanating from sources other than official coercion.” Oregon v. Elstad, 470 U.S. 298, 305 (1985).’ (Emphasis added.) 479 U.S. at 170.” State v. Brown, 286 Kan. 170, 174, 182 P.3d 1205 (2008) (quoting Connelly, 479 U.S. at 170).
Guein was no monk cloistered in a monastery. Although the officers profane statements may have had a coercive effect on some hypothetical person, the facts do not show the statements had any *424 such effect on Guein. Instead, the facts weigh heavily in favor of finding that Guein s statement that he had purchased the marijuana for $25 and intended to sell it to Gresham for $50 was the product of Guein s free and independent will. Because substantial evidence supports the district court’s finding that the State met its burden of proof as to voluntariness, I would affirm.