No. 103,508

STATE OF KANSAS, *Appellee*, v. DAVID ANDREW STEVENSON, *Appellant.*

(298 P.3d 303)

Opinion filed April 12, 2013.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kristafer Ailslieger*, deputy solicitor general, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: David Stevenson was convicted by a jury of premeditated first-degree murder. On direct appeal from that conviction he argues: (1) The prosecutor committed misconduct during voir dire by using a "Wheel of Fortune" analogy while questioning jurors about their understanding of the concept of reasonable doubt; (2) the trial court erred in refusing to give the defendant's requested instruction defining the phrase "reasonable doubt"; and (3) the trial court erred in giving an instruction, which mirrored Pattern Instructions for Kansas (PIK) Crim. 3d 51.10 (penalty not to be considered by jury), because it diluted the defendant's pre-

sumption of innocence. We reject his arguments and affirm his conviction.

## FACTS AND PROCEDURAL BACKGROUND

The State charged Stevenson with the March 13, 2008, premeditated first-degree murder of his father, Walter. Walter was found dead after being crushed by a hydraulic truck bed. The State presented evidence that Walter had been incapacitated by blows to his head before he suffered crushing injuries consistent with being pinned by the bed of the truck. The State's theory was that Stevenson and his father had been arguing and Stevenson murdered his father in order to gain control over the family farm and money in a family trust.

To present evidence that some injuries had been inflicted before Walter was crushed, the State established there was blood spatter in areas other than where Walter was found; there had been an attempt to clean up blood; there was blood under a puddle of oil that had been spilled some distance from the truck; and there was blood on a hammer. These various blood stains matched Walter's DNA. In addition, the State presented the coroner's opinion that some injuries were inconsistent with the type of crushing force that would be expected if the truck's hydraulics had failed and that those injuries had been administered while Walter was still alive. Further, other experts opined there was no physical evidence of a catastrophic hydraulic failure, such as leaked fluid.

The State pointed to Stevenson as the person who had killed Walter by presenting evidence of motive; establishing that Stevenson was the person who found Walter; presenting evidence of Stevenson's "odd" reaction to his father's death, such as "acting like he was crying"; establishing that Stevenson gave inconsistent statements; and proving inconsistencies between his version of events and the physical evidence. The State also established that Stevenson had no blood on his clothes, which made Stevenson's statement that he had attempted to free his father from the truck improbable given the large amount of blood loss at the scene.

In his defense, Stevenson presented expert testimony establishing that Walter's injuries and the blood spatters were consistent

with an accidental hydraulic failure. Stevenson also presented evidence of his activities that day in an effort to show he lacked the opportunity to have killed his father and staged the accident. Further, the defense experts and defense counsel attempted to cast doubt regarding whether it was possible to stage such an elaborate scene. For example, they opined it would be difficult to position Walter where he could be crushed under the truck bed if he had already been struck and rendered unconscious.

The jury convicted Stevenson of one count of premeditated first-degree murder. At sentencing, Stevenson received a life sentence without possibility of parole for 25 years. He now appeals, and this court has jurisdiction under K.S.A. 2012 Supp. 22-3601(b)(3) (maximum sentence of life imprisonment imposed).

## PROSECUTORIAL MISCONDUCT

In one of his issues on appeal, Stevenson contends the prosecutor committed misconduct during voir dire when asking questions that touched on the concepts of reasonable doubt and the State's burden of proof.

Appellate review of an allegation concerning prosecutorial misconduct, including misconduct occurring during voir dire, which need not be preserved by a contemporaneous objection, requires a two-step analysis. First, the court determines whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, if misconduct is found, the appellate court determines whether those comments constitute plain error, that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Burnett*, 293 Kan. 840, 850, 270 P.3d 1115 (2012); see *State v. King*, 288 Kan. 333, 344, 204 P.3d 585 (2009).

In arguing the prosecutor made comments that were outside the wide latitude allowed, Stevenson suggests the prosecutor attempted to define "reasonable doubt" even though this court has frequently indicated a definition of the term is not necessary. See, *e.g., State v. Wilson*, 281 Kan. 277, Syl. ¶ 4, 130 P.3d 48 (2006) ("No definition or explanation can make any clearer what is meant by the phrase 'reasonable doubt' than that which is imparted by

the words themselves."); *State v. Walker*, 276 Kan. 939, 956, 80 P.3d 1132 (2003) (" 'Efforts to define reasonable doubt, other than as provided in PIK Crim. 3d 52.02, usually lead to a hopeless thicket of redundant phrases and legalese, which tends to obfuscate rather than assist the jury in the discharge of its duty.' ") (quoting *State v. Acree*, 22 Kan. App. 2d 350, 356, 916 P.2d 61, *rev. denied* 260 Kan. 995 [1996]); *State v. Banks*, 260 Kan. 918, 927, 927 P.2d 456 (1996) (noting that this court "has long held that a jury instruction defining reasonable doubt is unnecessary"); *State v. Douglas*, 230 Kan. 744, 745, 640 P.2d 1259 (1982) (stating that this court adheres "to the position long-established in Kansas jurisprudence that no definition could make the concept of 'reasonable doubt' any clearer than the words themselves").

Yet, the prosecutor did not explicitly define "reasonable doubt." In fact, as Stevenson notes, the prosecutor began the voir dire questioning regarding reasonable doubt by telling the jury that neither the court nor the attorneys would define the concept. Even so, according to Stevenson, the prosecutor essentially presented a definition through an analogy to the "Wheel of Fortune" game show. To make this analogy, it appears from the record on appeal that the prosecutor displayed a sign printed with "Wheel of Fortune" nearly spelled out—one letter was missing. The prosecutor then noted that although there was a missing letter there was no reasonable doubt regarding what letter was needed to complete the title. The prosecutor continued:

"As to reasonable doubt, when we apply that standard, does anybody think that I'm going to have a videotape of exactly how everything happened? It would be impressive if I did, right? If you were there, you saw every step of the way, that would be beyond all doubt.

"Does anybody think I have to put you in that position?

. . . .

". . . Now, what if in your mind I have put on enough evidence to prove beyond a reasonable doubt that it occurred this way. Okay. So you are to that point, you've made your decision beyond a reasonable doubt.

"But then you say you know what, I wish they would have done whatever. Okay. . . . I guess the question I'm asking is do you think there's always something you could do in an investigation for instance?

"PROSPECTIVE JUROR . . . : I would say up to a point. But at some point in time there's just nothing else you can do."

The prosecutor followed up this exchange by asking, "Does everybody understand what I'm trying to say here? That I have to put on enough evidence to prove beyond a reasonable doubt? I do not have to put on every possible piece of evidence in existence . . . ."

In context, it is clear that the prosecutor was drawing a distinction between the concept of proof beyond a reasonable doubt and proof beyond all doubt, rather than attempting to provide a meaning for "reasonable doubt." See *People v. Serrano*, No. G037986, 2008 WL 82838, at \*4 (Cal. App. 2008) (unpublished opinion) (finding no error in use of "Wheel of Fortune" analogy, noting prosecutor "was attempting to provide an example to the jury of the difference between reasonable doubt and no doubt at all" and "[w]hile a puzzle with all its letters revealed would leave no doubt as to its solution, the answer to a puzzle with some letters unrevealed could still be beyond a reasonable doubt"); *State v. Edwards*, No. A03-1825, 2004 WL 2094454, at \*6-7 (Minn. App.) (unpublished opinion) (discussing "Wheel of Fortune" analogy and noting that "prosecutor's argument in this case suggested that reasonable doubt would diminish as more letters were added . . . [b]ut the prosecutor did not argue that the presumption of innocence disappeared at any point"), *rev. denied* December 14, 2004; see also *People v. DeHerrera*, No. C037642, 2002 WL 1064008, at \*5-6 (Cal. App.) (unpublished opinion) (rejecting defendant's claim that prosecutor's analogy to "Wheel of Fortune" game show in explaining the concept of reasonable doubt during closing argument was misconduct but also indicating that defendant failed to preserve the issue for appeal), *rev. denied* August 21, 2002.

Further, although we have "adhere[d] to the position long-established in Kansas jurisprudence that no definition could make the concept of 'reasonable doubt' any clearer than the words themselves," we have also "found no error in instructions defining 'reasonable doubt.' " *Douglas*, 230 Kan. at 745; see *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994) ("The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.").

That does not mean there cannot be error in the context of a discussion regarding reasonable doubt, however. Stevenson argues the prosecutor's comments injected error by lessening the State's burden of proof. In support of that argument, Stevenson cites *State v. Finley*, 273 Kan. 237, 42 P.3d 723 (2002).

There, Finley argued the prosecutor improperly defined the State's burden of proof with the following statement during closing argument:

" 'I would submit to you that a reasonable doubt is really nothing more than a fair doubt that's based on reason and common sense and arises from the status of the evidence. It's impossible for me to prove everything to you by an absolute certainty. At the same time, a defendant should not be convicted just on speculation and conjecture, but you have much more than that in this case. You don't just have speculation or conjecture that [the defendant] is guilty.' " *Finley*, 273 Kan. at 248.

The *Finley* court found the "speculation or conjecture" language was problematic because there was a risk that the prosecutor's definition "gave the jury the impression [that] something more than suspicion or conjecture is sufficient to reach reasonable doubt." *Finley*, 273 Kan. at 249. Conversely, the *Finley* court also noted that in the first part of the prosecutor's argument, the prosecutor gave a judicially approved definition of "reasonable doubt." Consequently, although some of the prosecutor's comments were improper, the court ultimately concluded that "[i]t cannot be said the prosecutor's argument regarding the burden of proof denied [the defendant] a fair trial." *Finley*, 273 Kan. at 249.

In contrast, the prosecutor's arguments in this case did not state or imply that the State's burden of proof was anything less than beyond a reasonable doubt. In fact, the prosecutor reiterated the State's burden of proving guilt beyond a reasonable doubt. In this way, the prosecutor's comments are different from those at issue in *Finley*. Consequently, we conclude the prosecutor's comments in this case were not improper. The use of the "Wheel of Fortune" analogy was not a misstatement of the law and did not fall outside the wide latitude afforded to prosecutors. Because of this conclusion, we do not reach the second step of the prosecutorial misconduct analysis—a part of which includes an examination of whether

the prosecutor acted with ill will—and Stevenson's arguments regarding demonstrated ill will in this case.

We pause to caution that our ruling should not be read as an endorsement of the "Wheel of Fortune" analogy. The prosecutor's comments in this case scuffed the line of misconduct without actually crossing it. Nevertheless, only a slight difference in wording would have resulted in error, and use of this analogy seems fraught with possibilities for stepping over the line of error. Especially troubling is the potential for quantifying reasonable doubt by discussing the difference between missing one letter as compared to more. Consequently, we discourage use of the "Wheel of Fortune" analogy.

### REASONABLE DOUBT INSTRUCTION

Stevenson also contends the trial court erred in refusing to give his requested instruction on the meaning of reasonable doubt. The trial court gave a routine pattern instruction on reasonable doubt, but Stevenson argues that a separate, expanded instruction was warranted because the court allowed the attorneys to discuss the concept of reasonable doubt during voir dire. Therefore, according to Stevenson, his proposed instruction was essential under the "particular circumstances of this case" in order to safeguard his right to a fair trial.

The trial court refused to give Stevenson's proposed instruction and, instead, gave Instruction No. 7, which mirrored PIK Crim. 3d 52.02 (burden of proof, presumption of innocence, and reasonable doubt):

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

Recently, this court outlined the steps to be followed when an appellate court considers a jury instruction issue, with applicable standards of review, explaining:

"For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

To fully preserve a claim that the trial court erred in failing to give a particular jury instruction, the defendant must distinctly state an objection to the omission before the jury retires to consider its verdict. K.S.A. 22-3414(3); *State v. Ellmaker*, 289 Kan. 1132, 1138, 221 P.3d 1105 (2009), *cert. denied* 130 S. Ct. 3410 (2010). In this case, defense counsel proposed the expanded reasonable doubt instruction during the jury instruction conference and objected to its omission. Defense counsel argued to the court the grounds upon which he believed the instruction was proper, namely, that the instruction would clarify matters for the jury and would help the jury "understand the concept of reasonable doubt." The issue was fully preserved for appellate review.

Next, this court must determine whether the requested instruction was legally appropriate. There is no question that an instruction on burden of proof, presumption of innocence, and reasonable doubt is legally appropriate in a criminal case. Instruction No. 7, based on PIK Crim. 3d 52.02, served that purpose. But the question here is whether an *additional* reasonable doubt instruction was legally appropriate.

Regarding this question, this court has repeatedly indicated that when PIK Crim. 3d 52.02 is given, "[a]dditional instructions defining reasonable doubt are unnecessary. [Citation omitted.]" *State v. Mack*, 228 Kan. 83, 88, 612 P.2d 158 (1980), *disapproved on other grounds by State v. Warren*, 230 Kan. 385, 635 P.2d 1236 (1981). The Pattern Instruction Committee has also concluded that "[n]o separate instruction should be given relating to presumption of

innocence and reasonable doubt." PIK Crim. 3d 52.02, Notes on Use.

Nevertheless, we have also recognized that while it is strongly recommended that a trial judge use the PIK instructions as written, modifications or additions can be made "[i]f the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK." *State v. Appleby*, 289 Kan. 1017, Syl. ¶ 20, 221 P.3d 525 (2009). Stevenson argues that a separate, expanded definition of reasonable doubt was necessary in this case because the trial court was too permissive in allowing "both the State and defense counsel free reign [*sic*] in discussing or explaining the meaning of reasonable doubt" during "arguments" and voir dire.

Yet, Stevenson gives no specific details regarding what statements in either the opening or closing arguments he believes were too broad. Factual assertions in an appellate brief are required to be keyed to the record on appeal. See Supreme Court Rule 6.02(a)(4) (2012 Kan. Ct. R. Annot. 38). Rather, Stevenson points solely to portions of voir dire in which the prosecutor questioned the venire panel members about reasonable doubt, and, as we have already discussed, we do not find this discussion required correction or clarification of the concept of reasonable doubt. Consequently, the circumstances of this case did not justify a departure from our general rule that a definition of reasonable doubt should not be given.

Therefore, we conclude an expanded reasonable doubt instruction was not legally appropriate. As a result, we hold that the trial court did not err in refusing to give a separate, expanded reasonable doubt instruction.

## PIK CRIM. 3d 51.10

Finally, Stevenson argues the trial court erred when it instructed the jurors in Instruction No. 5 that the jury's "only concern in this case is determining if the defendant is guilty or not guilty. The disposition of the case thereafter is a matter for determination by the Court." According to Stevenson, the instruction impermissibly diluted his presumption of innocence. Stevenson cites no legal au-

thority to support this contention and raises this argument for the first time on appeal. In fact, during the jury instruction conference, defense counsel stated, "No objection" to Instruction No. 5.

As previously mentioned, this court has recently clarified the analytical steps and corresponding standards of review for jury instruction issues on appeal. See *Plummer*, 295 Kan. 156, Syl. ¶ 1. In cases such as this where there was no objection, the reviewing court must determine whether the trial court's giving a particular jury instruction was clearly erroneous. See K.S.A. 22-3414(3); *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4-5, 286 P.3d 195 (2012).

The determination of whether an instruction is clearly erroneous employs a two-step process. First, "the reviewing court must . . . determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record." *Williams*, 295 Kan. 506, Syl. ¶ 4. The second step applies only if it is determined there was error. Under the second step, "the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal." *Williams*, 295 Kan. 506, Syl. ¶ 5.

Regarding the step of determining whether there was any error at all, both parties agree that Instruction No. 5 was based on PIK Crim. 3d 51.10. The jury instruction in PIK Crim. 3d 51.10 has been consistently approved by this court and is given because juries should not consider the ultimate disposition of the case. See, *e.g.*, *State v. Raskie*, 293 Kan. 906, 922, 269 P.3d 1268 (2012); *State v. Yardley*, 267 Kan. 37, 42, 978 P.2d 886 (1999); *State v. Osburn*, 211 Kan. 248, 254, 505 P.2d 742 (1973).

Nevertheless, according to Stevenson, PIK Crim. 3d 51.10 mistakenly informs the jury that it is to choose between two options (guilty or not guilty), as opposed to presuming that one option (not guilty) is true unless the State proves the defendant's guilt beyond a reasonable doubt. Thus, he argues that Instruction No. 5 diluted the State's burden to overcome the presumption that he was not

guilty of the charged crime. Stevenson further argues the dilution is exacerbated because the "guilty or not guilty" language in PIK Crim. 3d 51.10 conflicts with the presumption of innocence language clearly laid out in Instruction No. 7, the reasonable doubt jury instruction that was discussed earlier and was based on PIK Crim. 3d 52.02. Stevenson's contentions lack merit.

Despite Stevenson's argument to the contrary (and assuming no lesser included offenses are involved), a jury must choose between two options—guilty or not guilty—in order to reach a verdict in a case. In *Raskie*, this court recently explained:

"Stating this fact to the jury does not dilute or destroy the presumption that the defendant is not guilty (the first option) unless the State proves beyond a reasonable doubt that the defendant is guilty (the second option). The second option is discussed in other jury instructions that clearly inform the jury the State has the burden of proof to establish the defendant's guilt beyond a reasonable doubt." *Raskie*, 293 Kan. at 922.

The reference to "other jury instructions" in *Raskie* is illustrated by Instruction No. 7 in this case. Based on PIK Crim. 3d 52.02, Instruction No. 7 emphasized the presumption of Stevenson's innocence, by stating: "You must presume that he is not guilty unless you are convinced from the evidence that he is guilty." Then, Instruction No. 7 also used the "guilty or not guilty" terminology and explained the jury's task:

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

These instructions must be read together because this court has repeatedly stated that "[i]n reviewing jury instructions for error, we examine the instructions as a whole, rather than isolate any one instruction, and determine if the instructions properly and fairly state the law as applied to the facts of the case. [Citations omitted.]" *Ellmaker*, 289 Kan. at 1139-40. Instruction No. 5 and Instruction No. 7 were accurate statements of the law, are not in conflict, and, when read together, accurately instructed the jury on the State's

burden of proof. Accordingly, the trial court did not err by including Instruction No. 5 in the court's instructions to the jury.

Affirmed.