NOT DESIGNATED FOR PUBLICATION

No. 113,862

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOCELYN HERNANDEZ-CARTAGENA,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOSEPH BRIBESCA, judge. Opinion filed September 1, 2017. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., LEBEN and BRUNS, JJ.

LEBEN, J.: A jury convicted Jocelyn Hernandez-Cartagena of aggravated human trafficking based on the role she played in a Wichita prostitution ring. She raises three arguments on appeal, but each one runs contrary to recent caselaw from our court or the Kansas Supreme Court:

- First, she argues that the district court erred by instructing the jury that it "should" convict her if it found that the State had proved all elements of the crime beyond a reasonable doubt. She suggests that the court should instead say that the jury "may" convict the defendant under those circumstances. But the word "'should' does not express a mandatory, unyielding duty or

obligation; instead, it merely denotes the proper course of action and encourages following the advised path." *State v. Allen*, 52 Kan. App. 2d 729, Syl. ¶ 5, 372 P.3d 432 (2016), *rev. denied* April 17, 2017. Accordingly, as our court held in *Allen* and other cases, the use of "should" in this instruction is proper. See, e.g., *Allen*, 52 Kan. App. 2d 729, Syl. ¶ 5; *State v. Taylor*, No. 115,420, 2017 WL 1034543, at *4 (Kan. App.) (unpublished opinion), *petition for rev. filed* April 17, 2017. In a related argument, she claims that the prosecutor misstated the law when he said the jury should ask, "[D]id the State prove its case, and if so, you find her guilty." But the prosecutor said nothing that contradicted the court's jury instruction on this point.

- Second, she argues that the State should have charged her with promoting prostitution because it is a more specific offense than aggravated human trafficking. But the Kansas Supreme Court has held that promoting prostitution isn't a more specific offense than aggravated human trafficking. *State v. Williams*, 299 Kan. 911, Syl. ¶ 5, 329 P.3d 400 (2014). And the facts in this case don't require a different conclusion.

- Third, she argues that her registration requirement violates the Ex Post Facto Clause of the United States Constitution because at the time of her crime, aggravated human trafficking wasn't an offense that required registration, while now it does. But laws that violate the Ex Post Facto Clause are those that apply retroactively *and* are punitive, and a majority of the Kansas Supreme Court had held that Kansas' sex-offender registration system isn't punitive. See *State v. Reed*, 306 Kan. ___, Syl., ___ P.3d ___, 2017 WL 3326944 (No. 110,277, filed August 4, 2017); *State v. Petersen-Beard*, 304 Kan. 192, Syl. ¶ 2, 377 P.3d 1127 (2016). So even though aggravated human trafficking wasn't a registration crime at the time of Hernandez-Cartagena's actions in 2013, the 2014 amendment making

2

aggravated human trafficking a registration offense can be applied to her without violating the Ex Post Facto Clause.

We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2013, 16-year-old Y.M. ran away from home. By mid-February, she was working as a prostitute for Jaylyn Bradley, a Wichita pimp. Y.M. was arrested in April.

Officer Michael Nagy, who works with a police unit dedicated to missing and exploited children, interviewed Y.M., and she eventually identified Bradley as her pimp and Hernandez-Cartagena as another of Bradley's prostitutes (and also the mother of his child). Y.M. said that Hernandez-Cartagena was Bradley's "bottom bitch," meaning that she'd do anything for him. According to trial testimony, the term "bottom bitch" describes a pimp's top girlfriend and second in command; she is like middle management, driving girls to meet prostitution clients and collecting money for the pimp.

There isn't much dispute about the facts surrounding how Y.M. came to work for Bradley, the work she did for Bradley, or the ways that Hernandez-Cartagena was involved. According to Y.M., in mid-February 2013, she went to Houston for a weekend with Bradley, Hernandez-Cartagena, and two other people. While there, someone placed an escort ad for her on Backpage.com, and she worked as a prostitute for the first time.

Y.M. continued working as a prostitute after she returned to Wichita, in motel rooms that Hernandez-Cartagena rented for her. The State presented four receipts from a motel, all signed by Hernandez-Cartagena. Y.M.'s escort ads appeared in the Wichita section of Backpage.com; both Bradley and Hernandez-Cartagena posted those ads for

3

her, and Hernandez-Cartagena taught her how to regularly update her posts to keep them at the top of the page.

Sometimes prostitution clients would come to the motel to meet with Y.M., but other times Y.M. met her clients elsewhere. When that happened, either Bradley or Hernandez-Cartagena would drive Y.M. to meet the client; Y.M. estimated that she'd had more than 20 appointments like this and that Hernandez-Cartagena had driven her to 5 or 6 of them. When Hernandez-Cartagena drove, she would wait outside during Y.M.'s appointment and then drive her back to the motel; Y.M. would leave the money in the car with Hernandez-Cartagena. (Y.M. wasn't allowed to keep any of the money she earned while working for Bradley.)

The State charged Hernandez-Cartagena with aggravated human trafficking, a severity-level-one person felony, for her role in Bradley's prostitution ring and specifically for the act of driving Y.M. to her prostitution appointments. The aggravated-human-trafficking statute prohibits transporting someone under 18 with knowledge that the person will be used to engage in someone's sexual gratification. K.S.A. 2012 Supp. 21-5426(b)(4).

Hernandez-Cartagena asked the district court to instruct the jury on the lesser offense of promoting prostitution and to change the wording of the reasonable-doubt instruction so that the jury would feel free to acquit even if the State presented sufficient evidence. The district court denied both requests. The jury convicted Hernandez-Cartagena of one count of aggravated human trafficking.

The sentencing hearing was continued for over a year while Hernandez-Cartagena provided the police with evidence against Bradley (who eventually pled to and was convicted of sexual exploitation of a child). During this time, Hernandez-Cartagena was on supervised release from jail, and she successfully followed all the conditions of her

4

release. At sentencing, Hernandez-Cartagena asked to be placed on probation instead of being sent to prison, and the State agreed with her request, in part because she had provided evidence against Bradley and in part because she had followed all the conditions of her release pending sentencing. The district court granted Hernandez-Cartagena's request and imposed 36 months of probation with an underlying 176-month prison term. The district court informed Hernandez-Cartagena that aggravated human trafficking is a lifetime-registration offense, so she would have to register as a sex offender for the rest of her life.

Hernandez-Cartagena has appealed to our court.

ANALYSIS

I. *Neither the District Court nor the Prosecutor Incorrectly Stated the Law on Reasonable Doubt and the Burden of Proof.*

Hernandez-Cartagena first argues that the district court erred when instructing the jury on reasonable doubt and the burden of proof. She complains that the jury instruction kept the jury from exercising its inherent right to disregard the law and evidence to acquit a defendant.

Hernandez-Cartagena objected to this instruction at trial. So we must determine whether the instruction fairly and accurately states the law, a question we consider independently and without any required deference to the district court. *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015); *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012); *State v. Jones*, No. 111,386, 2015 WL 4716235, at *5 (Kan. App. 2015) (unpublished opinion). If the district court did err in giving the instruction, we must determine whether the error was harmless. *Woods*, 301 Kan. at 876; *Plummer*, 295 Kan. at 162-63.

5

The jury instruction that Hernandez-Cartagena challenges was taken from the standard jury instructions that Kansas trial courts are encouraged to use. A committee created these instructions, aiming to provide accurate, clear, and uniform instructions to trial courts. See *Allen*, 52 Kan. App. 2d at 733-34. Specifically, Hernandez-Cartagena challenges the use of the word "should" in the last sentence of the instruction:

> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.) PIK Crim. 4th 51.010.

Hernandez-Cartagena argues that the jury instruction was not legally appropriate because it precluded the possibility of jury nullification—the power of the jury "to disregard the rules of law and evidence in order to acquit the defendant based upon the jurors' sympathies, notions of right and wrong, or a desire to send a message on some social issue." See *Allen*, 52 Kan. App. 2d 729, Syl. ¶ 4. She contends that the use of the word "should," rather than the word "may," requires the jury find the defendant guilty if it finds that all elements of the charged crime were proven beyond a reasonable doubt.

Although Hernandez-Cartagena is correct that jurors in a criminal case *may* disregard the rules of law and the evidence in order to acquit a defendant, the proper duty of a jury is to accept the rules of law given to it as instructions, apply those rules to determine whether facts are proven, and deliver a verdict based on those considerations. *State v. McClanahan*, 212 Kan. 208, 217, 510 P.2d 153 (1973). For those reasons, criminal defendants aren't entitled to have the jury expressly instructed on its inherent power of nullification. *State v. Naputi*, 293 Kan. 55, 66, 260 P.3d 86 (2011).

6

At the same time, the jury instructions cannot forbid a jury from exercising its inherent nullification power. *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014). In *Smith-Parker*, the relevant jury instruction read: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.'" (Emphasis added.) 301 Kan. at 163. Our Supreme Court decided that this instruction went too far and "essentially forbade the jury from exercising its power of nullification." 301 Kan. at 164. The court concluded that the use of "must" or "will" amounted to directing a verdict for the State, noting that "[a] judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164.

In her brief, Hernandez-Cartagena discusses *State v. Lovelace*, 227 Kan. 348, 354, 607 P.2d 49 (1980), *overruled in part by Smith-Parker*, 301 Kan. 132, where our Supreme Court held that the words "must" and "should" were interchangeable and acceptable in a reasonable-doubt instruction, as "[b]oth convey a sense of duty and obligation." *Smith-Parker* discussed *Lovelace*'s holding and overruled it, concluding that the use of "must" in *Lovelace* and the use of "will" in *Smith-Parker* "fly too close to the sun of directing a verdict for the State." 301 Kan. at 164. In essence, the *Smith-Parker* court concluded that "must" was much closer in meaning to the term "will" than to the term "should." See 301 Kan. at 164; *State v. Benewiat*, No. 114,676, 2017 WL 66355, at *7 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* February 6, 2017. In our view, the holding in *Smith-Parker* suggests that the use of "should" in a reasonable-doubt jury instruction is appropriate. See *Smith-Parker*, 301 Kan. at 164; *Benewiat*, 2017 WL 66355, at *7.

Our court has consistently held that the jury instruction at issue is proper. See, e.g., *Allen*, 52 Kan. App. 2d 729, Syl. ¶ 5; *Taylor*, 2017 WL 1034543, at *4; *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *1-2 (Kan. App. 2016) (unpublished opinion), *rev.*

7

*denied* April 17, 2017; *State v. Jones*, No. 111,386, 2015 WL 4716235, at \*6 (Kan. App. 2015) (unpublished opinion). We agree with those decisions.

Hernandez-Cartagena argues that "should" is the past tense of "shall," and "shall" is, by definition, a command or an indication that something is mandatory. But her argument is off the mark when applied to this jury instruction. While it is possible to use "should" as the past tense of "shall," that use isn't common because we don't use "shall" much in spoken language. See *Taylor*, 2017 WL 1034543, at \*3. In any case, that's not how the word "should" is used in this jury instruction. Instead, the "should" in the instruction simply reflects a lesser degree of duty than "shall." See Black's Law Dictionary 558 (10th ed. 2014) (noting that a directory requirement, which is an action that is advisable but not mandatory, "is frequently introduced by the word *should*"); Black's Law Dictionary 1585 (10th ed. 2014) (noting that while "shall" properly means a mandatory requirement, it is sometimes interpreted to mean "should," a lesser duty); Garner's Dictionary of Legal Usage 952-55 (3d ed. 2011).

As the *Allen* panel recognized, "Unlike the words 'must,' 'shall,' and 'will,' the word 'should' does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path." 52 Kan. App. 2d 729, Syl. ¶ 5. Likewise, in *State v. Singleton*, No. 112,997, 2016 WL 368083, at \*6 (Kan. App.) (unpublished opinion), *rev. denied* 305 Kan. 1257 (2016), a panel of this court emphasized that "should" is advisory, explaining:

> "[A]s every teacher instructing a class knows, and as every parent admonishing a child knows, should is less of an imperative than must or will. [Citation omitted.] Nutritionists urge that we all should eat our vegetables. But that does not constitute a directive to have recalcitrant diners force-fed their vegetables if they do not comply. . . . Should as used in this instruction is not the equivalent of 'must' or 'will' . . . . Should is advisory. It is not an imperative."

8

In summary, the jury instruction on reasonable doubt and the burden of proof accurately stated the law; it did not direct a verdict for the State or take away the jury's inherent power of nullification.

In a similar argument, Hernandez-Cartagena claims that the prosecutor misstated the law on jury nullification by telling the jury, during closing argument, that it *must* convict her if the State had proven all the elements of the crime beyond a reasonable doubt.

When analyzing claims of prosecutorial error, we first ask whether the prosecutor's comments were improper and outside the wide latitude that the State has to prove its case. If they were, we then ask whether the improper comments prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). "A defendant is denied a fair trial when a prosecutor misstates the law and the facts are such that the jury could have been confused or misled by the statement." *State v. Robinson*, 306 Kan. ___, 394 P.3d 868, 876 (2017); see *State v. Huddleston*, 298 Kan. 941, 946, 318 P.3d 140 (2014).

Here, Hernandez-Cartagena claims that the prosecutor misstated the law on jury nullification when he finished his closing argument and asked the jury to convict:

> "Call her a cabbie, call her a bottom girl, call her a middle manager. The fact is, she's involved in this organization, and she's in for a penny, she's in for a pound. You may find it distasteful. You may find—you may have pity. You may say, you know what, I feel sorry for this young girl. You can't do that. You have to step back and *you have to say, did the State prove its case, and if so, you find her guilty*. That's what I'm required to prove, nothing more, nothing less, and that's all I ask of you, to follow the law and find her guilty." (Emphasis added.)

9

Hernandez-Cartagena claims that the italicized language is the same as a reasonable-doubt jury instruction telling the jury that if it finds that the State has proved all the elements of the crime beyond a reasonable doubt, it "must" or "will" convict the defendant. See *Smith-Parker*, 301 Kan. at 164 (holding that "must" and "will" come too close to directing a verdict for the State). But the prosecutor didn't actually use the words "must" or "shall"; he only said, "if so, you find her guilty." This could mean "you *must* find her guilty," as Hernandez-Cartagena argues. But it could just as easily mean "you *should* find her guilty"—the language we have approved in the reasonable-doubt jury instruction—or "you *may* find her guilty"—the language Hernandez-Cartagena requested in that jury instruction. Because of this vagueness and the wide latitude allowed in closing arguments, we do not conclude that the prosecutor misstated the law. See also *State v. Spalding*, No. 114,561, 2017 WL 1433513, at *6-7 (Kan. App.) (unpublished opinion) (holding that prosecutor did not err by urging jurors, during voir dire, to follow the law), *petition for rev. filed* May 18, 2017; *Cuellar*, 2016 WL 1614037, at *2-3 (same).

The State cites several unpublished cases from this court holding that prosecutors did not err by telling the jury during closing argument that it "must" convict if the State had proved each element of the crime beyond a reasonable doubt. We do not rely on these cases because they all rest on the now-disapproved notion from *Lovelace* (and other cases) that "must" and "should" are interchangeable in the context of reasonable doubt and burden of proof. See *State v. Jones,* No. 109,231, 2014 WL 1707480, at *4-5 (Kan. App. 2014) (unpublished opinion) (noting that court was bound to follow Supreme Court precedent in *Lovelace*); *State v. Johnson*, No. 107,524, 2013 WL 2321167, at *6 (Kan. App. 2013) (unpublished opinion) (noting that Kansas Supreme Court rejected a difference between "must" and "should"); *State v. Fawl*, No. 103,004, 2011 WL 4563067, at *7 (Kan. App. 2011) (unpublished opinion) (same). Instead, we simply conclude that the prosecutor in this case did not misstate the law when he encouraged the jury to follow the law because he did not tell the jury that it "must" convict Hernandez-Cartagena.

Because we find no error, we need not move on to the second step of the prosecutorial-error analysis. See *State v. Stevenson*, 297 Kan. 49, 54-55, 298 P.3d 303 (2013) (finding no error and declining to analyze second step).

Hernandez-Cartagena also argues that these two errors taken together require us to reverse her conviction. She's right that errors that are individually harmless may require reversal when considered together. *State v. Hart*, 297 Kan. 494, 513, 301 P.3d 1279 (2013). But we have found no error at all, in either the jury instruction or the prosecutor's statement, so there can be no cumulative error. See *State v. Williams*, 299 Kan. 509, 566, 324 P.3d 1078 (2014).

II. *Promoting Prostitution Is Not the More Appropriate Charge for the Crime Charged Here.*

Hernandez-Cartagena argues that her conduct was prohibited by both the aggravated-human-trafficking statute and the promoting-prostitution statute, so she could only be convicted of promoting prostitution because it's the more specific offense. She didn't raise this issue at the district court, but we will consider it for the first time on appeal because it involves only a question of law that could be finally determinative of the case. See *Williams*, 299 Kan. at 929-30.

When one statute speaks to a subject specifically and conflicts with another that deals with the subject more generally, the specific statute will apply. *State v. Cott*, 288 Kan. 643, 645, 206 P.3d 514 (2009). This rule—called the general/specific canon of statutory interpretation—is used to determine which statute applies in a particular case. See *State v. Helms*, 242 Kan. 511, 514, 748 P.2d 425 (1988); *Cott*, 288 Kan. at 645; *State v. Williams*, 250 Kan. 730, 733, 829 P.2d 892 (1992); Scalia and Garner, Reading Law: The Interpretation of Legal Texts 183-88 (2012). Whether this rule applies is a question

11

of law that we review independently and without any required deference to the district court's conclusion. *Williams*, 299 Kan. at 930. And because the rule is just a way of determining legislative intent, it doesn't apply when there is a clear indication that the legislature didn't intend for one statute to be the only option for punishing a particular activity. 299 Kan. at 930; see *Cott*, 288 Kan. 643, Syl. ¶ 2; *Helms*, 242 Kan. at 514.

The portion of the aggravated-human-trafficking statute that applied to Hernandez-Cartagena makes it a crime to transport a person under 18 with knowledge that the person "will be used to engage in forced labor, involuntary servitude or sexual gratification of the defendant or another." K.S.A. 2012 Supp. 21-5426(b)(4). But there was another statute potentially applicable here that was already in place at the time the new, aggravated-human-trafficking statute was enacted. The other statute outlawed promoting prostitution, defined as knowingly "transporting a person within this state with the intention of assisting or promoting that person's engaging in prostitution." K.S.A. 2012 Supp. 21-6420(7). (The promoting-prostitution statute has since been amended to apply only when the victim is over 18 and has been renamed "Promoting the sale of sexual relations." See K.S.A. 2016 Supp. 21-6420.) So both statutes appear to cover Hernandez-Cartagena's actions in driving Y.M. to her prostitution appointments, and they arguably conflict since they have different severity levels and thus different attendant penalties. Is the promoting-prostitution statute more specific such that it should have been applied to her?

In *Williams*, the defendant made the same argument that Hernandez-Cartagena makes here, and the Kansas Supreme Court concluded that promoting prostitution was not a more specific offense than aggravated human trafficking. 299 Kan. 911, Syl. ¶ 5. The court reviewed the legislative history and noted that the testimony from the legislative hearings suggested that the trafficking statute was meant to capture a broad range of activities, despite some overlap with crimes that already existed. 299 Kan. at 931. The *Williams* court noted that the legislature intended the trafficking statute to apply

12

in situations "in which a minor's vulnerability is exploited through an abuse of power." 299 Kan. at 923. So although Williams' conduct would have met the definition of promoting prostitution, his actions also "went beyond the behaviors targeted by that provision and more clearly [fell] within the scope of conduct the legislature intended to criminalize through the aggravated trafficking statute." 299 Kan. at 932. Thus, under the facts of that case, promoting prostitution wasn't a more specific version of aggravated human trafficking, and the State could prosecute Williams for aggravated human trafficking.

In our case, Hernandez-Cartagena claims, under the facts of *her* case, that promoting prostitution *is* a more specific version of aggravated human trafficking. She argues that the evidence showed substantially less control and exploitation than in *Williams* because she and Y.M. were both under the control of Bradley, their pimp. For example, she points to testimony that she only drove Y.M. to sexual encounters when Bradley told her to.

But Hernandez-Cartagena ignores other evidence of exploitation that supports charging her with trafficking rather than promoting prostitution. For example, according to the evidence, Hernandez-Cartagena was the second-in-command in Bradley's prostitution ring. When Bradley and Hernandez-Cartagena took Y.M. to Houston, evidence suggested that Hernandez-Cartagena provided the vehicle to get there and controlled the money Y.M. made there. When they returned to Wichita, she set up Y.M.'s Backpage ads, taught her how to update her ads to increase marketability, rented and paid for her hotel rooms, waited outside during appointments, drove her to other sexual encounters, and collected the money Y.M. made. Although Hernandez-Cartagena may have been controlled by Bradley, she nonetheless controlled and exploited Y.M. as a more junior member of Bradley's prostitution ring. Her conduct went beyond the behaviors targeted by the promoting-prostitution statute and fit better under the aggravated-human-trafficking statute. See *State v. Sanders*, No. 111,738, 2015 WL

13

5311429, at \*2-4 (Kan. App. 2015) (unpublished opinion) (conducting similar factual comparison and concluding that promoting prostitution wasn't the more specific offense), *rev. denied* 304 Kan. 1021 (2016); *State v. Neloms*, No. 110,391, 2016 WL 463362, at \*8 (Kan. App. 2016) (unpublished opinion) (concluding that *Williams* held that regardless of factual distinctions, promoting prostitution can never be a more specific offense than aggravated human trafficking), *rev. denied* August 24, 2017. We believe the conclusion reached by our Supreme Court in *Williams* applies here too: "[W]e hold that promoting prostitution is not a more specific crime under the facts of this case." 299 Kan. at 933.

III. *Requiring Hernandez-Cartagena to Register as a Sex Offender Doesn't Violate the Ex Post Facto Clause of the United States Constitution Because Registration Isn't Punishment.*

Hernandez-Cartagena's final claim is that her registration requirement is unconstitutional because at the time of her crime, aggravated human trafficking wasn't an offense that required registration. She didn't raise this issue below, but we consider it for the first time on appeal to prevent the denial of fundamental rights and because it's an issue of law arising on undisputed facts. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). We review the constitutionality of a statute independently, without any required deference to the district court. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127 (2016).

The Ex Post Facto Clause of the United States Constitution forbids laws that impose a punishment for an act which was not punishable when it was committed or that impose additional punishments to those that existed when the act was committed. U.S. Const. art. 1, § 10. "Ex post facto" is a Latin phrase that simply means "after the fact"; it's something done later. Black's Law Dictionary 701 (10th ed. 2014). So an "ex post facto" law is one that applies retroactively to events that took place before it became a law. The government violates the Ex Post Facto Clause if two critical elements are present: (1) the law is retrospective, in that it applies to acts done before it was passed, and (2) the law

14

disadvantages the offender affected by it by adding additional punishment. *State v. Prine*, 297 Kan. 460, 469, 303 P.3d 662 (2013).

Here, Hernandez-Cartagena claims that her registration requirement violates the prohibition on ex-post-facto laws because she committed aggravated human trafficking in 2013, and that crime didn't become a registration offense until 2014. L. 2014, ch. 117, sec. 2; K.S.A. 2016 Supp. 22-4902(c)(13). After she filed her brief, though, the Kansas Supreme Court issued its opinion in *Petersen-Beard*, in which a majority of the court held that the Kansas Offender Registration Act (as amended in 2011) was not punishment "for purposes of applying provisions of the United States Constitution." 304 Kan. 192, Syl. ¶ 1. The *Petersen-Beard* majority determined that the Act was intended "to be a nonpunitive and civil regulatory scheme rather than punishment." 304 Kan. at 195. The court recently reaffirmed *Petersen-Beard*, concluding in *State v. Reed*, 306 Kan. ___, Syl., that "[r]egistration for sex offenders mandated by the Kansas Offender Registration Act . . . does not constitute punishment under the Ex Post Facto Clause of the United States Constitution."

Thus, because laws that violate the Ex Post Facto Clause are those that apply retroactively *and* are punitive, and because the registration requirement *isn't* punitive, there's no constitutional problem with applying changes to the registration statute retroactively. So even though aggravated human trafficking wasn't a registration crime at the time of Hernandez-Cartagena's actions in 2013, the 2014 amendment making aggravated human trafficking a registration offense can be applied to her without violating the Ex Post Facto Clause.

We affirm the district court's judgment.