NOT DESIGNATED FOR PUBLICATION

No. 127,033

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAY JAMES MARSHALL,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Submitted without oral argument. Opinion filed December 12, 2025. Affirmed.

*David S. Patrzykont*, of David S. Patrzykont, Attorney at Law, P.A., of Kansas City, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before HURST, P.J., ATCHESON and ISHERWOOD, JJ.


PER CURIAM: Ray James Marshall appeals his misdemeanor convictions for sexual battery and intimidation of a witness following a jury trial. He contends that the prosecutor improperly minimized the State's burden of proof when she distinguished "beyond a reasonable doubt" from "beyond all doubt" and "beyond a shadow of a doubt." Kansas courts have consistently held that such statements fall well within the latitude a prosecutor is afforded when presenting their case. We are not persuaded this case

1

demands a departure from that determination. Accordingly, Marshall's convictions are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Marshall with sexual battery and intimidation of a witness, and the case eventually proceeded to a jury trial. During voir dire, the State addressed the burden it carried at trial and informed the prospective jurors:

> "The State has the burden in a criminal case to prove the elements of the crime beyond a reasonable doubt.
>
> . . . .
>
> "As to what beyond a reasonable doubt means, I cannot give you that definition. The defense cannot give you that definition. Judge Sutherland cannot provide you with that definition.
>
> . . . .
>
> "What I can tell you, though, is what it is not. And beyond a reasonable doubt is not beyond any doubt, it is not beyond a shadow of a doubt. Those would be higher burdens than what my burden is."

During closing arguments, the prosecutor again touched upon the State's burden:

> "Remember in selection when we talked about the State's burden—which is a high burden, beyond a reasonable doubt as it should be—but remember that we discussed that we cannot define beyond a reasonable doubt for you. But remember what we talked about in selection, that we can tell you that it is not beyond any doubt, as the defense attorney just said. It is not beyond a shadow of a doubt. My burden is beyond a reasonable doubt."

The jury was instructed on reasonable doubt in accordance with PIK Crim. 4th 51.010 (2020 Supp.):

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

Marshall was ultimately found guilty as charged. The district court imposed a jail term for each offense and ordered them to run concurrently for a total sentence of 12 months.

The case now comes before this court upon Marshall's request that we analyze the prosecutor's statements concerning the State's burden of proof to determine whether they improperly influenced the jury's verdict and undermine the validity of his convictions.

LEGAL ANALYSIS

*The prosecutor did not mislead the jury when addressing the State's burden of proof during voir dire and closing arguments.*

Marshall contends that the State committed prosecutorial error by using the phrases "beyond a shadow of a doubt" and "beyond any doubt" to negatively define reasonable doubt for the jury and that these statements compromised the fair trial he is entitled to receive. The State counters that no misconduct occurred and supports its assertion by highlighting those decisions from Kansas courts that declined to characterize similar statements as erroneous. We find the State has the better argument.

Appellate review of claims of prosecutorial error based on comments made during voir dire, opening statement, or closing argument is not contingent upon an objection.

Even so, the presence or absence of an objection may be factored into an analysis of the alleged error. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021), *abrogated on other grounds by State v. Stubbs*, 320 Kan. 568, 570 P.3d 1209 (2025).

*Standard of review*

When a defendant alleges that prosecutorial error impacted their right to a fair trial, we analyze the claim in two parts: the conduct at issue, or the "error," and any resultant prejudice. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

The statutory harmlessness test also applies to prosecutorial error, but when analyzing both constitutional and nonconstitutional error, appellate courts only need to address the higher standard of constitutional error. *State v. Carr*, 314 Kan 744, 764, 502 P.3d 511 (2022).

Consistent with *Sherman*, the first step of our analysis is to ascertain whether the challenged statements fall outside the wide latitude of acceptable conduct by a prosecutor. 305 Kan. at 109. To make that determination we must consider the context in

which the remarks were made, rather than analyze them in isolation. *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019). The line between permissible and impermissible argument is frequently context dependent. *State v. Martinez*, 311 Kan. 919, 923, 468 P.3d 319 (2020) (citing *State v. Blansett*, 309 Kan. 401, 412-13, 435 P.3d 1136 [2019]).

Again, Marshall's first claim of error arises out of statements extracted from a discussion the prosecutor shared with prospective jurors during voir dire concerning the State's precise burden of proof at trial. During that exchange the jury was informed that Marshall is innocent until proven guilty and the filing of charges alone does not establish his guilt. Rather, the State bears the sole responsibility of establishing each element of the charged offenses beyond a reasonable doubt.

Immediately after touching upon those foundational principles and the burden of proof, the State informed the jury that while the attorneys and the judge were not permitted to attach a definition to that burden, some degree of clarification was possible by describing what it was not. It was at this point that the prosecutor explained that the standard is not "beyond a shadow of a doubt" or "beyond any doubt" because those overstate the certainty threshold. The State concluded its coverage of the issue by posing two questions, framed in the context of the two most likely situations the jury was likely to find itself in at the conclusion of the case:

> "If the State does not prove the elements of the crime, all the elements beyond a reasonable doubt, will anybody have a problem rendering a verdict of not guilty?"
>             . . . .
> "If the State does prove each element of the two crimes charged beyond a reasonable doubt, will anyone have a problem rendering a guilty verdict?"

The State then reminded the jury during its closing argument that the standard it is required to satisfy is not beyond any doubt or beyond a shadow of a doubt, it is simply beyond a reasonable doubt.

5

Kansas courts "adhere to the position long-established in Kansas jurisprudence that no definition could make the concept of 'reasonable doubt' any clearer than the words themselves." *State v. Douglas*, 230 Kan. 744, 745, 640 P.2d 1259 (1982). Thus, parties have consistently been cautioned to avoid endeavoring to define reasonable doubt because it frequently obscures the State's burden and results in a misstatement of the law. See *State v. Garcia-Garcia*, 309 Kan. 801, 816-17, 441 P.3d 52 (2019).

The consequence for the failure to abide by that directive manifested as a reversal in *State v. Walker*, 276 Kan. 939, 80 P.3d 1132 (2003). In that case, the jury submitted a note to the district court during deliberations that requested a clearer definition of "reasonable doubt." The State requested that the judge adhere to the recommendations of PIK and not provide any further definitions. The judge informed defense counsel that he had crafted two potential definitions and was willing to issue either one if that was how counsel preferred to proceed. Walker's attorney asserted that he knew of no reason not to honor the jury's request and selected the court's definition that expounded at length on the purported meaning of the phrase.

On appeal, Walker argued that several components of the augmented definition violated his right to a fair trial and highlighted the phrase "'It is such a doubt as a juror is able to give a reason for,'" as particularly problematic. *Walker*, 266 Kan. at 955. The Kansas Supreme Court agreed and reversed Walker's conviction upon finding that rather than lending clarity, the judge's more expansive definition only succeeded in creating greater confusion. 266 Kan. at 955-56.

The State took similarly misguided steps in *State v. Mitchell*, 269 Kan. 349, 358-61, 7 P.3d 1135 (2000), when it told the jury during closing arguments that the State's burden of proof "'in any criminal case'" does not contemplate "'precision or exactness'" but is instead grounded in "'common sense.'" The *Mitchell* court observed that while it is not categorically wrong for the State to mention common sense in its closing argument or

to tell the jury that it is permitted to use common sense in reaching its decision because that factor remains a true measure by which to evaluate the evidence, the same rationale does not extend to the principle of reasonable doubt. Attempting to incorporate the notion of common sense into that arena leads to error because it misleads the jury and minimizes the State's burden. The *Mitchell* court ultimately found, however, that his convictions were insulated from reversal because on the whole, he received the fair trial he is entitled to. 269 Kan. at 360-61.

While crafting a definition is ill-advised, it is important to note that Kansas courts have specifically declined to extend the same admonition to those incidents that mirror Marshall's case—when efforts are undertaken to explain that "beyond a reasonable doubt" does not mean beyond all doubt or beyond a shadow of a doubt, provided that explanation does not misstate the law or diminish the State's burden of proof. See *State v. Stevenson*, 297 Kan. 49, 51-52, 298 P.3d 303 (2013). These statements are beneficial for their ability to clarify the true legal standard required in criminal cases and reduce the likelihood that the jury will demand an unattainable degree of certainty.

In *State v. Banks*, 260 Kan. 918, 926, 927 P.2d 456 (1996), the court was tasked with determining whether the district court abused its discretion in denying Banks' request for mistrial after the prosecutor made statements during closing argument that are nearly identical to those Marshall has asked us to analyze:

> "'My burden is the burden that you must consider this case beyond a reasonable doubt. It is not beyond any doubt, it is not beyond the shadow of a doubt, it is beyond a reasonable doubt.
> "'*Reasonable doubt means if you are going to say these men are not guilty of something, you have to give a reason for it*.'" (Emphasis added.)

The *Banks* court concluded, without equivocation, that the prosecutor's first two statements "were proper," but the same could not be said for the italicized language. 260

Kan. at 926. Even so, it declined to find that the district court's refusal to order a mistrial in response to that isolated remark was unreasonable. 260 Kan. at 926-28. Instead, it determined that when the problematic phrase was viewed as merely a segment of the State's collective discussion regarding its burden of proof, that burden was clearly and sufficiently articulated for the jury. 260 Kan. at 927.

Marshall's case also parallels the statements analyzed in *Stevenson*. In that case, the State, like the prosecutor in Marshall's case, informed the prospective jurors that neither the court nor the attorneys would provide them with a definition for reasonable doubt. In an apparent effort to fill that void, the prosecutor stated:

> "'As to reasonable doubt, when we apply that standard, does anybody think that I'm going to have a videotape of exactly how everything happened? It would be impressive if I did, right? If you were there, you saw every step of the way, that would be beyond all doubt.
> "'Does anybody think I have to put you in that position?
>      . . . .
> "'. . . Now, what if in your mind I have put on enough evidence to prove beyond a reasonable doubt that it occurred this way. Okay. So you are to that point, you've made your decision beyond a reasonable doubt.
> "'But then you say you know what, I wish they would have done whatever. Okay. . . . I guess the question I'm asking is do you think there's always something you could do in an investigation for instance?'" 297 Kan. at 52.

The prosecutor followed up by clarifying: "'I have to put on enough evidence to prove beyond a reasonable doubt? I do not have to put on every possible piece of evidence in existence. . . .'" *Stevenson*, 297 Kan. at 53.

On appeal, the *Stevenson* court was not persuaded that the prosecutor's remarks equated with an impermissible definition of "reasonable doubt." It instead found that when analyzing the statements in context, it was clear their import was to simply draw "a

8

distinction between the concept of proof beyond a reasonable doubt and proof beyond all doubt." 297 Kan. at 53. In arriving at its conclusion, the court highlighted the fact that the prosecutor never asserted that the State's burden was anything less than beyond a reasonable doubt and to the contrary, the prosecutor repeatedly reminded the jurors of the burden it carried. Thus, the prosecutor did not misstate the law or present an argument that went beyond the latitude they were afforded in presenting their case to the jury. 297 Kan. at 54.

The *Banks* and *Stevenson* courts declined to find the statements at issue in those cases objectionable because they did not define reasonable doubt, they merely reiterated the State's burden. There is no appreciable distinction between the remarks analyzed in those cases and the statements made by the prosecutor in Marshall's case. Marshall acknowledges those holdings but implores us to revisit the analysis. The foundation for his request, however, is merely his disagreement with the outcome of those cases. He has not favored us with a sound, compelling argument that justifies a reclassification of the remarks. Accordingly, we are not inclined to break rank with the rationale set forth in *Banks* and *Stevenson*.

To the extent we were so inclined, we are not at liberty to execute such sweeping changes given that Marshall has failed to identify any Kansas Supreme Court decisions that illustrate it is departing from its position in either *Banks* or *Stevenson*, thereby paving the way for us to undertake a new analysis. Until such indication of change is made clear, we remain duty-bound to follow the precedent of that court and will continue to treat its holdings as binding upon our decisions. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022).

We decline to find that prosecutorial error occurred or that reversal is otherwise required. When the challenged remarks are analyzed in context, as we are required to do under our governing standard of review, we are satisfied that the statements fall within

the wide latitude the State was afforded in presenting its case and accurately communicated the State's burden of proof. Because error did not occur we need not address whether the prosecutor's actions resulted in prejudice to Marshall. See *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024) ("Because there was no prosecutorial error, we need not reach the prejudice prong of the prosecutorial error analysis.") (citing *Sherman*, 305 Kan. at 109). Thus, Marshall's convictions are affirmed.

Affirmed.